HEARD *v.* FARMERS' BANK OF HARDY.

Opinion delivered May 23, 1927.

1. BILLS AND NOTES—EXPLANATION OF DELAY IN COLLECTION.—Whether a bank's delay for nearly five years, and until after the bank president's death, in an effort to collect a note signed by defendant and by the president of the bank, was due to pendency of a separate suit between the makers, *held* a question for the jury, where the surviving maker contended the note had been paid.

2. BILLS AND NOTES—INTEREST.—Where a note stipulated for interest "with interest maturity at the rate of 7 per cent. and thereafter until paid at 7 per cent. per annum," whether it bore interest from date or from maturity, *held* a question for the jury.

3. LIMITATION OF ACTIONS—JURY QUESTION.—Whether, under the evidence, there was an agreement for an extension of the note, as affecting the running of the statute of limitations, *held* a question for the jury.

4. APPEAL AND ERROR—EVIDENCE NOT OBJECTED TO.—Whether a question was asked of a witness in proper form or not will not be considered on appeal, as it went to the jury in the form in which it was asked without objection.

5. TRIAL—IMPROPER OPENING STATEMENT.—Refusal to permit an attorney in his opening statement to quote the contents of a statute, and refusal to permit him to prove such statute in his evidence, *held* proper, as the matter was a question of law to be given in an instruction by the court.

6. EVIDENCE—SELF-SERVING STATEMENT.—The court properly refused to permit the maker of a note to prove, in a suit thereon by the payee, that he had said to his attorney before suit that he thought the note bore interest from date, as his unsworn self-serving statement was not competent proof of his intention.

7. APPEAL AND ERROR—HARMLESS ERROR.—If it was error to permit the indorsement on a note to be read over the objection of the maker, who alleged that the action was barred by the statute of limitations, such error was harmless where the maker himself testified that he made the payment of interest at the time it was credited as shown by the indorsement.

8. BILLS AND NOTES—PARTIES DEFENDANT.—The payee of a note of joint makers may sue both or either, though one received the money and the other was surety merely.

9. BILLS AND NOTES—SUFFICIENCY OF PROOF OF PAYMENT.—Proof that a deceased bank president who was a joint maker had agreed to pay a note in favor of the bank would not establish that he

had paid it, even though other evidence tended to show that he had the note in his possession after maturity, but the question would be for the jury.

10. EVIDENCE—ADMISSIBILITY OF STATEMENT.—Refusal of the offer of the maker of a note to prove by witnesses a statement of the payee bank's deceased president, who was a joint maker thereof, and personally attended to the matter, that the note had been paid, *held* error, as the testimony was admissible after the statement was made in the president's official capacity.

11. EVIDENCE—BEST EVIDENCE.—Testimony for the payee bank that it sent to defendant maker a notice to pay interest if he desired an extension would be inadmissible over objection without proof that plaintiff served notice on defendant to produce the notice.

12. EVIDENCE—STATEMENTS OF OFFICIAL OF BANK.—Where the president of the bank is authorized to manage a particular business matter, his statements in reference thereto, made in his official capacity, are admissible in suit thereon.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris*, Judge; reversed.

*A. C. Martin* and *James E. Hogue*, for appellant.

*McMillen & Scott* and *Taylor Roberts*, for appellee.

MEHAFFY, J.   This is a suit upon a promissory note for $750 and interest.   The complaint alleged that on the 15th day of January, 1919, the appellant executed to appellee his promissory note for $750, due 90 days after date and bearing interest from maturity at the rate of 7 per cent. per annum.   That on the 17th day of April, 1919, the appellant paid the sum of $13.31 to the appellee for the purpose of paying the interest on said note to July 15, 1919, which payment was accordingly credited on said note, as shown on reverse side of same.   Judgment was asked for $1,128.07.   The following is a copy of the note:

"$750                    Little Rock, Ark., Jan. 15, 1919.

"Ninety days after date we promise to pay to the order of the Farmers' Bank of Hardy seven hundred and fifty and no/100 dollars at the office of the Union Trust Company, Little Rock, Ark., for value received, with interest maturity at the rate of seven per cent. per annum and thereafter until paid at seven per cent. per annum.

"The makers and indorsers of this note hereby severally waive- presentment for payment, notice of non-payment and protest.

"Geo. M. Heard,
"S. P. Turner."

"Due 4-15-19, Little Rock.    Due No. 5747."

On the reverse side of the note is the following:

"April 17, 1919 int. pd. to July 15, 1919."

Defendant filed answer, admitting execution of the note, but denying that he had ever made a payment of interest to July 15, 1919; denied that there was anything due on the note, and alleged that the cause of action was barred by the five-year statute of limitations. An amendment was thereafter filed to the complaint, stating that on the 17th day of April, 1919, the appellant paid to the appellee the sum of $13.31 for the purpose of paying interest on said note and extending the maturity thereof to July 15, 1919, which payment was duly credited on said note, as shown on reverse side of same.

A. M. Metcalf, cashier of the Farmers' Bank of Hardy, testified in substance as follows: That the loan to appellant was made through the Farmers' Bank at Hardy. That the note had not been altered nor changed in any manner; that the proceeds of the loan at the time that it was made were credited upon the books to the credit of George M. Heard; that he should judge that the money remained there something like a week or ten days; that the appellant checked the money out in a lump sum; and that the note had not been paid; that there had been one interest payment; that the note matured on the 15th day of April, 1919, and that he notified the appellant and told him that the note would mature on such and such a date, and, if he desired an extension, the amount that would be necessary for a ninety-day extension, if he wanted it, that the amount, including sixteen cents for revenue stamps, was $13.31. That he thought that the $13.31 was the interest payment from April 15 to July 15, and that he credited that interest payment on the note.

Here the attorney asked the following question: "Then you tell the jury, in response to that letter or notice that you sent to Mr. Heard stating that the note would mature April 15, and that, if he wanted to extend the maturity date, it would be $13.15 interest plus sixteen cents revenue stamps, and in response to that he sent you $13.31?" The witness answered, "He did."

On cross-examination Mr. Metcalf said that the loan was made on the very day of the date of the note. That the note was brought into the bank by Turner and Mr. Heard together. He notified appellant that there was three months' interest due, by letter, but he did not have a copy of the letter. He just used a regular printed pad. He went out of the bank, December 1, 1919, and went back in 1923. S. P. Turner died Christmas week, 1922. There had been no administration of the estate of S. P. Turner, but the estate is solvent, and the appellee could have collected the note from the estate of S. P. Turner if it had tried.

H. W. Trigg testified that he was assistant cashier of the People's Savings Bank, and that the appellant had an account in his bank in January, 1919. He had in his possession the ledger sheet for the business of 1918 and 1919. Appearing thereon, under date of April 21, is a debit transaction of $13.31 to appellant's account, and the record showed that the check was paid on April 21, 1919.

George M. Heard, the appellant, testified that S. P. Turner came to Little Rock on Monday, the 13th, and was in Little Rock, stopping at appellant's house for several days; that on the 14th appellant took up the question of the advance to appellant, and it was agreed that they would give this note, and they went to the People's Bank, and the check was passed to appellant's credit. Appellant asked Mr. Turner for $750; Mr. Turner owed him more than that. Mr. Turner owed him money. The note was made in Little Rock, on a blank of the Union Trust Company. Appellant and Turner went to the

People's Bank on the 15th, and that money was deposited to appellant's credit, the amount being $736.85. He asked Mr. Turner to advance him $750 on what he owed him, and Mr. Turner told him that he did not have the money, and they agreed to give their note to the bank. The court interrupted here and said, "That is not evidence at all—what Mr. Turner told him." He does not know whether Mr. Turner carried the note away or whether it went through the bank here, but the proceeds of it were deposited to his credit at the People's Savings Bank on that occasion; that he did not pay for the stamps. The amount of the interest shows that the stamps were paid for by somebody else. Mr. Metcalf was mistaken about appellant being in his bank on the 15th of the month. He was not there on the 15th of the month; he was here (in Little Rock); the 15th of the month was the day Brough was inaugurated. The transaction was had on the 14th. It was unusually late, and was after banking hours; that the bank gave him a deposit slip dated the 14th, and held the money and it went to his credit the next morning, the 15th, and the next day the note was given for that amount. He was not at Hardy on the 15th. If anything was placed to his credit, somebody else did it. If the money was placed to his credit in the Bank of Hardy, he never did draw it out. He did not do any business with that bank. He thought that he was paying back interest. He never paid any interest on the note. Turner returned the money to him. His idea was that the note drew interest from date. He got $750. He was asked if he did not tell one of his attorneys, two or three weeks before the case was tried, that the note bore interest from date. The court sustained an objection to this question, and appellant excepted. Turner paid him the difference out of his own pocket; he got $750. Mr. Turner asked him to send the interest, and Turner paid it back to him. He didn't know that there was ever a stamp put on the note. He sent a check for the interest to the Farmers' Bank at Hardy. At the time that he sent the check for the interest, he had no thought of renewing the note. He was

asked to send the money up there, and he did it. He did not ask Mr. Metcalf to make that indorsement on the note. There was no agreement between him and any of the bank officials for the note to be extended.

W. E. Lenon, president of the People's Savings Bank of Little Rock, produced the ledger sheet of the account of the appellant with that bank from November, 1918, to March, 1919. That record showed that a deposit of $736.85 was made by the appellant in the People's Savings Bank on the 15th of January, 1919. This ledger sheet also showed that checks drawn by the appellant were paid on the 15th of January in sums as follows: $15, $58, $120, $5.60, and $20. Witness did not know where this deposit of $736.85 came from, but the deposit slip showed that it was a check. The People's Savings Bank had always let appellant have money whenever he asked; he could not recall a time when he had not let appellant have money when he asked for it.

S. S. Crawford stated that he was sheriff of Franklin County from 1918 to 1920. S. P. Turner was at Ozark in summer of 1919 or 1920, and while there he handed witness a note for $750 to the Bank of Hardy, and signed by the appellant and S. P. Turner. Witness had the note in his hands, and looked at it.

June P. Clayton, a lawyer, who lives at Ozark, testified that, some time about the time that this note was given, appellant and S. P. Turner were in Ozark negotiating with a client of the witness for the purchase of about forty-five thousand dollars' worth of property. They were introduced to the witness by his client, and after that appellant and Mr. Turner made several trips up there, and would often go to Mr. Clayton's office. On one occasion Mr. Turner was getting some papers out of his pocket, and threw out this note. He commenced to state what Mr. Turner said at the time, but, without any objection being made by the appellee, the court told him that he could not testify to what Mr. Turner said. Witness said: "Not being able to testify as to what he said,

I got the impression that the note was paid from the conversation.'' The court sustained an objection to this testimony.

Mr. Heard, upon being recalled, said that the check for $120 which was paid by the People's Savings Bank on the 15th of January, 1919, was for six months' interest on a note for $3,000 which he owed the bank.

Here the appellant asked permission of the court to read § 704 of Crawford & Moses' Digest as evidence to the jury, but permission of the court was refused.

Aubrey Turner, a witness for plaintiff, testified in rebuttal, in substance, as follows: That the note had not been out of the bank since he had it until it was brought to Little Rock to be filed in this suit; that the note was the property of the bank at the time that Mr. Metcalf retired, and that witness succeeded him, and that the note was there all the time after that up to September, 1924. That the note had not been paid. He knew that it had not been paid because no record in the bank showed that it had been paid. It had been an asset of the bank ever since witness had been connected with it. He knew that there was a great deal of private dealings between his father and the appellant. He was asked if the appellant had not performed some expensive and valuable services for his father, and the court sustained an objection to the question.

The witness said that he was one of the children and heirs-at-law of S. P. Turner, and that, if the note was not collected from the appellant, it would have to be paid by the witness, as the note was signed by S. P. Turner and George M. Heard.

When asked why he had not brought suit upon the note before, he said that appellant had brought suit against his father relative to fees which appellant claimed that his father owed him for some trades in land and property, that suit was pending, and appellant apparently was unwilling to have it tried. He did not push it. That the idea that he had in allowing the note to go unsued on was

to get rid of this suit that appellant had made against his father. He brought this suit after the other suit had ended. This suit of the appellant against his father was brought a short time before his father's death.

A. M. Metcalf, being recalled, testified in substance as follows: Mr. Metcalf introduced a deposit slip made out by himself, which showed that $736.85 was deposited in the appellee's bank to the credit of the appellant on the 16th of January, 1919. That money was drawn out of the bank on the 21st day of January, 1919, five days after the deposit was made.

The appellant moved to exclude this deposit slip as evidence, but the court overruled the motion. He did not have this check upon which the money was drawn out of the bank. It was sent back to Mr. Heard. Witness testified from his knowledge of a custom and not from his remembrance of the transaction. He said that he would not remember making out any particular slip.

There was a verdict for the plaintiff. Defendant filed a motion for a new trial, which was overruled, and defendant has appealed to this court. Appellee was the plaintiff below, and the appellant was the defendant below. There seems to have been three trials in the circuit court. The circuit court at one time directed a verdict for the defendant. Plaintiff filed a motion for a new trial, which was afterwards granted, and the case was again tried, submitted to the jury, and the jury failed to agree. It was finally tried before a jury, and it found a verdict for the plaintiff.

This note was given to the Bank of Hardy on January 15, 1919, and matured 90 days after date. About the time of maturity plaintiff contends that it sent a notice to the defendant, in which was stated the amount of interest or the amount necessary to pay to extend the note for 90 days. This this notice was sent, and that the defendant mailed a check to the Bank of Hardy for an amount sufficient to pay the interest and revenue stamps. If the note was extended at that time, as con-

tended by the plaintiff, it became due on July 15, 1919, and it appears that from July 15, 1919, up to about the time this suit was brought there was no effort to collect, no communication between the parties with reference to the note, and the only explanation of this delay on the part of the plaintiff to try to collect the note is the state-- ment that there was a suit brought by the defendant against S. P. Turner, the president of the bank, and that plaintiff wanted to wait until that suit was disposed of before making an effort to collect the note. This, of course, may be true. Whether it is true or not was a question of fact for the jury, and, if submitted to the jury under proper instructions, the jury's verdict is conclusive.

The testimony is conflicting as to whether the transaction took place in Little Rock or in Hardy. It is unimportant, however, whether the parties were in Little Rock or in Hardy when the note was made, and the testimony as to that is of no importance except as it might throw some light on the question whether, at the time defendant sent the check in April, 1919, there was an extension of the note for 90 days. If there was such an extension, this extension operated as a postponement of the right to bring suit for 90 days, and, if such agreement was made, the cause of action was not barred when suit was begun. If the agreement to extend the note was not made, the cause of action was barred by the statute of limitations. The defendant believes that the note bore interest from date instead of maturity, and testifies that he did not intend to pay interest except what was due up to that time, believing, as he did, that it bore interest from date, and that he did not intend that the note should be extended.

The cashier of the Bank of Hardy testified that he wrote the defendant, stating to him that the note would mature April 15, and that, if he wanted to extend the maturity date, it would require $13.15 interest plus 16c revenue stamps, and in response to this letter the defendant sent a check for $13.31. It also appears from the evi-

dence that, while the note was for $750, the deposit made in the People's Savings Bank on the date the note was made was for $736.85, indicating that the 90 days' interest was deducted from the note at the time it was made, and that it therefore bore interest from maturity instead of from date. Whether the note bore interest from maturity or from date, and also whether there was an agreement to extend the note, were questions of fact to be determined by the jury.

It is earnestly contended by the appellant that there is no evidence that the defendant paid the interest for the purpose of extending the maturity of the note to the 15th of July, and he argues that the nearest approach to evidence on this question is an improper question by attorney for the plaintiff and the witness' answer to said question. It appears, however, from an examination of the transcript, that the defendant did not object to the question, and the question was asked and the witness answered it without objection on the part of the defendant. Therefore, whether asked in the proper form or not, it went to the jury in the form in which it was asked, without objection. And, while the evidence appears to be very slight, and while there are a number of circumstances that tend to corroborate the defendant, yet, as we have said, these were questions for the jury.

The defendant testifies that the transaction was in Little Rock. The plaintiff's witnesses testify that it took place in Hardy, and yet the note was on a blank form of the Union Trust Company of Little Rock, and also, on the very day the note was given, the amount was deposited to defendant's credit in the People's Savings Bank in Little Rock. It is also contended by the appellant that the court erred in not permitting the defendant's attorney, in his opening statement, to state the contents of part of § 704 of Crawford & Moses' Digest, and erred in not permitting defendant to prove this statute or part of this statute to the jury. The circuit court was correct in holding that this was not proper to be proved in evi-

dence, but that that was a question of law to be given to the jury as an instruction from the court.

It is also contended by the appellant that the court erred in not permitting him to prove that he had stated to his attorney, some time before the trial, that he thought the note bore interest from date. And, as a reason for urging this as proper evidence, he states that, as to whether there was an extension of the note, was a question of intention on the part of the defendant. The defendant had a right to prove his intention, but he would have to prove it by competent testimony. The testimony offered was not competent. It was a declaration made by the defendant out of court, and it has been said:

"A witness is not allowed to testify as to an unsworn statement made by himself on a former occasion, and declarations of a witness out of court, inconsistent with his testimony, are not admissible to prove the truth of facts stated but only for purposes of impeachment." 22 C. J. 206.

Again it has been said:

"It is a well established general rule that a statement of a party, whether oral or written, which is of a self-serving nature, is not admissible in evidence in his favor. While such statements are usually made because the declarant is for some reason interested, at the time, in having the fact supposed or believed to be as stated by him, the element of present interest is not essential, for it has been considered that the rule applies with full force, notwithstanding the fact that the declarant was disinterested at the time when the statement was made. Such declarations are not rendered admissible by having been part of a conversation or correspondence with the declarant's witness, or with a person sent by the opposite party, or with the adverse party himself, or his agent; by having been brought to the attention of the other party or his agent and commented upon by him; by having been entered upon a book of account or other record; or by being brought out on cross-examination. Such declarations are equally inadmissible when offered

by the declarant's representatives, and the rule of exclu sion also applies when such declarations are offered in evidence by third persons on their own behalf." 22 C. J. 220.

The appellant contends that the court erred in permitting the indorsement on the note to be read, over his objection, but whether that was proper or improper is immaterial, because the defendant himself testified that he made the payment of interest at the time it was credited on the note. There was no effort to show that there was any indication on the note that this credit had been made on a later date, or that any erasures or changes in the note had been made at a later date, or that there was anything suspicious about the manner or appearance of any of these things. The defendant himself testified that he sent the check about the time the note matured, that he got the amount of it from the record he had, but whether he got it from that or whether the cashier wrote to him, as a matter of fact, he did pay the interest at that time.

Turner and the defendant were joint makers of the note, and the holder of the note would have a right to sue both or either, and the fact that one of them got the money or that one of them was surety would not be a defense when sued by the holder of the note. As between Turner and Heard, the evidence offered as to the agreement between them would be proper. It is true that the contention of appellant was that Turner had paid the note, but even the offer to prove that Turner had agreed to pay it would not be a defense, and if he could prove that Turner had agreed to pay the note it would not be a defense when the defendant was sued. Nor would this proof, if made, have shown Turner had actually paid the note. Defendant was permitted to prove, and did prove, that Turner had the note in his possession some time in the summer of 1919 or 1920, but this evidence was before the jury, and the jury evidently considered it.

The defendant offered to prove by witnesses the statements of the president of the bank that the note had been

paid.   We think, under the circumstances and evidence
in this case, that this evidence should have been admitted.
The only disputed points in the case that are material are,
first, whether the note was extended, and second, whether
it was paid.   The plaintiff proved that the bank had sent
Heard a notice which stated, in effect, if he wanted to
extend the time of payment for 90 days, to send $13.31,
and that Heard sent that amount of money.   This testi-
mony was admitted without objection, but, if objection
had been made to it, it could not have been introduced
unless the plaintiff had served notice on the defendant
to produce the letter.   And this is the only testimony
introduced tending to show that there was an agreement
to extend the note 90 days, and the defendant swears pos-
itively that he never made any such agreement.

It has been said: ''But to exclude relevant evidence
by any positive and arbitrary rule must be not only
absurd in a scientific view, but, what is worse, frequently
productive of absolute injustice.   It may safely be laid
down that the less the process of inquiry is fettered by
rules and restraints, founded on supposed considerations
of policy and convenience, the more certain and effica-
cious will it be in its operation. Formerly the very means
devised for the discovery of truth and advancement of
justice were not unfrequently perverted to the purposes
of injustice, and made the instruments of the most griev-
ous and cruel oppression.   *   *   *   The admission of
every light which reason and experience can supply for
the discovery of truth, and the rejection of that only
which serves not to guide but to bewilder and mislead,
is the great principle that ought to be the foundation of
every system of evidence.   Common experience rather
than technical rules should be adopted as the test. Mer-
cantile and industrial life, producing, as they do, nearly
all the transactions of men that come before the courts
of law and equity, are essentially practical.   *   *   *   The
courts need not discredit what the common experience
of mankind relies upon.   Judge Cooley once said that
'courts would justly be the subject of ridicule if they

should deliberately shut their eyes to the sources of information which the rest of the world relies upon.' Lastly, whenever there is any serious doubt in the law as to whether certain proof is or is not permissible, a safe rule to pursue is to permit the testimony to go to the jury." 10 R. C. L. 861.

The proof shows that the bank, the plaintiff in the case, was a domestic corporation, that Turner was its president, and that all the dealings had with reference to the note or with the bank by the defendant were made through the president. He loaned the money to Heard for the bank, and his declaration that the bank had received payment should have been admitted.

This court has said: "Wooten, who was the president when the note and mortgage were executed by Kirby to Maynor, testified that he heard Maynor tell Kirby that he would give him credits later on in the fall in settlement of what was owed to him (Kirby), and directing Kirby to make up a list. This was competent testimony, and tended to show that, at the time the note and mortgage were executed, Maynor acknowledged that Kirby had an unsettled account against him for which Kirby was entitled to credit." *Kirby* v. *Wooten,* 132 Ark. 441, 201 S. W. 115. See also *Yarbrough* v. *Arnold,* 20 Ark. 597.

Where a president of a corporation is authorized to manage a particular business matter, his statements in reference thereto are admissible. See *Lowe* v. *Yolo County Consolidated Water Co.,* 108 Pac. 297, 157 Cal. 503; *Holmes* v. *Turner-Falls Co.,* 6 L. R. A. 283, 150 Mass. 535, 23 N. E. 305.

It must be remembered that Turner was not only the president of the bank, but that he personally attended to this matter. And it was about this particular transaction that defendant asked permission to prove his declarations. In addition to that, he had the note in his possession. Speaking of declarations of officers of corporations, the Minnesota court has said:

"Such statements are admissible as against the corporation only when made in the course of the perform-

ance of their authorized duties as agents. So that the statements constitute a part of their conduct as agents—a part of the *res gestae.*" *Longman* v. *Anderson,* 160 Minn. 15, 199 N. W. 732.

The Texas court has said: "According to the greater weight of authorities the same rule is applied to the competency of the declarations of executive officers, managers and general agents of a corporation, when such declarations are shown to be used against the corporations they represent. The apparent scope of their authority is broader than in cases of special or ordinary agents, but their declarations, to be competent as evidence against the corporation represented by them, must, nevertheless, be made while acting within the scope of such apparent authority and with the connection of the performance of some duty to which said declarations are pertinent." Jones on Evidence, vol. 2, 1800. *Southern Surety Co.* v. *Nalle & Co.* (Tex. Com. App.), 242 S. W. 197.

Of course the declaration must be made in the agent's official capacity. This feature of it was not sufficiently developed to know whether he would make it in his official capacity or not. One witness stated that he was acting individually, but we think the defendant should have the right to show that he was the president of the corporation, that he attended to this particular transaction, and be permitted to show whether or not the declaration was made as president of the corporation. Turner, after the time when it was alleged he made the declaration, died, and of course could not be had as a witness. It is said by many authorities that testimony as to the declaration of deceased persons is the weakest kind of testimony. But its weight would be for the jury, and, in view of the facts that the note was in Turner's possession, that the bank held this note all these years without making any effort to collect, and the undisputed proof that the money was gotten by Turner to pay Heard a debt or a portion of a debt that he owed him, we think that this testimony should have been admitted, and, for the error in excluding the above testimony, the case is reversed, and remanded for a new trial.