CONTINENTAL CASUALTY COMPANY *v.* SPEER.

4-8798                                   219 S. W. 2d 763

Opinion delivered April 25, 1949.

*Adams & Willemin, John M. Lofton, Jr.*, and *Owens, Ehrman & McHaney*, for appellant.

*Giles Dearing*, for appellee.

GRIFFIN SMITH, Chief Justice. John Henry Speer died July 31, 1947, from a gunshot wound. The circumstances were such that family, friends, and officials who were called, believed that the .22 calibre rifle bullet entering Speer's head slightly above the right eye was fired with suicidal intent. There was no inquest.

Speer carried insurance with three companies: Pacific Mutual, Continental Casualty, and Brotherhood of Locomotive Engineers. The latter paid without suit.

The $2,000 policy by Pacific Mutual was against death through accidental means, excluding suicide. Continental Casualty would pay $1,000 for accidental death, suicide excluded, plus twelve times the amount of a stipulated accident indemnity of $60 per month,—$720.

Bessie L. Speer, beneficiary named in each of the policies, demanded payment under claim that her husband's death was accidental. In addition to the contention that suicide avoided the policies, each Company denied knowledge of the other's insurance, and pleaded a contractual provision for proportional reduction of the amount payable.

*Sufficiency of the Evidence.*—Appellants think they should have had instructed verdicts based on the proof of suicide. This would require a determination here

that the presumption against self-destruction was overcome by inferences from physical facts. Stated differently, our finding would be that the position of Speer's body when found, the location of the wound, and the relative situation of gun and body, pointed absolutely to a purposeful act. There was testimony, however, that the single-shot bolt-action rifle could be unintentionally discharged. The mechanism was worn, or defective to such an extent that if the weapon were "cocked" it could be fired by touching the "bolt," and without reference to the trigger.

In spite of assertions by witnesses that for several hours before death Speer had been drinking, the jury could have believed those who discounted the assertion of appreciable intoxication; nor can it be said that a motive was shown. Speer was 38 years of age, lived with his wife in the City of Wynne, and had four children. He earned approximately $300 per month as a Missouri Pacific fireman. Mrs. Speer had a separate income from services as clerk in a local grocery store. During the fateful day Speer expressed an intent to report for duty, but shortly before the tragedy he sent a note to the foreman, explaining that illness had intervened. No one was in the room when the weapon was discharged. A witness stated that when she discovered the body Speer was lying with his head on a pillow, with his feet crossed at the foot of the bed: "He was on his back just as though asleep. The gun was across his body with the muzzle toward his face, at a slight angle. His left hand was holding the barrel of the gun and his right hand [was at] the trigger guard."

The gun was not introduced as an exhibit, although the record shows that it was displayed at trial. There is an inference that demonstrations incidental to testimony of the witness Penix (one familiar with firearms) emphasized the mechanical fault which might allow the firing pin to function without use of the trigger. It is argued that Speer—who kept the gun within easy reaching distance of the bed—may have concluded to clean the barrel, and was looking down from the muzzle when the accident occurred. If we should agree

that in the light of all circumstances this was highly improbable, the alternative is that it was not impossible. We conclude, therefore, that the defendants did not overcome the presumption against suicide. Availability of the gun for examination could conceivably present a different record.

*Copies of Letters.*—Appellants' counsel propounded to an official of each company interrogatories designed to bring into the record certain transactions with Speer that might affect the policies. The interrogatories were not crossed by the plaintiff. When at trial appellee under guidance of her attorney undertook to testify that as agent for Speer she wrote to the defendants, informing each that the other had issued a policy, objections were interposed on the ground that the original letter would be the best evidence. Mrs. Speer then stated that she retained carbon copies, and replies were received and placed with her husband's books and papers, but after Speer's death the answers were unintentionally destroyed when a room was renovated, but the copies were saved. The originals, said Mrs. Speer, were written on a common ruled tablet, such as would be used by a child for school work. The carbon copies bore date of July 20, 1946,—nineteen days after issuance of the policies. The originals were properly addressed, stamped, and posted.

At the time these letters are alleged to have been written, Mrs. Speer and her husband were living on a farm near Colt, in St. Francis County, and there was no thought of litigation. It was not contended that the purpose was to put each company on notice of the other's policy. On the contrary, Mrs. Speer testified that because of a disparity in premium rates, she wanted an explanation, hence the inquiries.

Appellants' interrogatories were not directed to this specific transaction for the reason, as counsel explained, that there had been no intimation such a claim would be advanced; and general explanations in response to direct interrogatories were not sufficient to meet the issue. When overruled on this point the defendants

pleaded surprise and asked for sufficient time to communicate with the companies' home office, and to make inquiry regarding collateral matters touching the contention that the copies were genuine. The motions were overruled and exceptions saved.

We think the trial Court underestimated the importance to appellants of an unimpaired opportunity to defend against a situation reasonable foresight might not have anticipated. The purpose of trial is to administer justice within the law. The interrogatories were forwarded at a time when there had been no hint of an intention to claim, through incidental references in letters not written for that express purpose, notice of plural insurance; hence, when company officials responded to the inquiries, they had no reason to make the thorough search one might be expected to engage in when a particular thing could have been misplaced; nor could they, if convinced that the described letter had not been received, make the characteristic denial that ordinarily attends emphatic disclaimer.

While counsel for appellee no doubt felt that he was justified in offering the copies when the companies inferentially denied the originals by failing to mention them, we think the better practice, and the procedure more nearly conforming to statutory intent, required a demand for the originals. Pope's Digest, §§ 5147-48. See *Heard* v. *Farmers' Bank of Hardy,* 174 Ark. 194, 295 S. W. 38; *Union Central Life Ins. Co.* v. *Mendenhall,* 183 Ark. 25, 34 S. W. 2d 1078.

For the errors indicated the judgments are reversed.