AMERICAN PIONEER LIFE INSURANCE COMPANY
*v.* Carl ALLENDER

CA 85-17                                          713 S.W.2d 249

Court of Appeals of Arkansas
En Banc
Opinion delivered July 9, 1986

*Davidson, Horne, Hollingsworth, Arnold & Grobmyer*, A Professional Association, by: *Allan W. Horne* and *Patrick E. Hollingsworth*, for appellant.

*Harkey, Walmsley, Belew & Blankenship*, by: *John Norman Harkey*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a judgment by the Independence County Circuit Court finding appellant liable on an insurance policy. The policy was issued to appellee in 1970 by Educators and Professional Life Insurance Company. The printed policy contained a provision for coverage of "Accidental Death or Dismemberment," along with provisions for other coverage. The present appellant subsequently assumed the obligations of the company that issued the policy. A number of years ago, the appellee became disabled and has since been paid monthly benefits under a disability provision of the policy.

In 1983, both of appellee's feet were amputated due to circulatory problems resulting from several heart attacks. He then filed a claim against appellant claiming that, under coverage afforded by the policy, he was entitled to $10,000.00 for the dismemberment of his feet. Appellant denied the claim and this suit followed.

The controversy centers around the application. It is a form containing blank lines upon which the information called for may be written. Each blank is numbered and the information in each blank is written by hand—according to the trial judge's find-

ings—by the hand of the insurance agent. The blanks crucial to this case appear as follows:

10. Monthly Indemnity for Total Disability $200.00

11. Maximum Indemnity Period
    Sickness _V_ 5 Years
    Accident _V_ Lifetime

12. Elimination Period
    Sickness _V_ 7 Days
    Accident _V_ 0 Days

13. Optional Benefits
    a. $400.00      In Hospital Expense
    b. $500.00      Accident Medical Expense
    c. $10,000.00   Accidental Death and Dismemberment
    d. Other $10,000.00 both feet, hands
    Eyes, $5,000.00 for one foot, hand
    eye

Over the appellant's objection, the appellee introduced evidence by a witness who testified that he was one of the agents who sold the insurance policy to appellee. It was his testimony that he and another agent had attended training sessions at which the president of the insurance company told them the kind of policy that is involved in this case would cover loss of limbs, no matter whether caused by sickness or accident. The witness said he and the other agent had been trying to sell this policy to the appellee and, when they received the above information from the president of the company, they went back to appellee and told him what the president had said. The witness said this information is what caused appellee to buy the policy. He said the information written in the application blank after the word "Other," under "Optional Benefits," means that the policy will pay $10,000.00 for loss of both feet, hands or eyes, and $5,000.00 for loss of one foot, hand or eye, whether the loss is from sickness or accident. It was his testimony that the president of the company instructed him and the other agent that this was what the language written in the blank would do, and that this meaning of the language was explained to the appellee at the time the application was taken and again when the policy and application were delivered to appellee after they were received by the agents from the home office in Little Rock. The appellee confirmed the above testimony in regard to what he had been told by the agents and why he finally bought the policy.

The case was tried by the circuit judge, without a jury, and he made specific findings of fact upon which the judgment is based. On appeal, the appellant argues that the medical dismemberment of appellee's feet was not covered by the policy, that the judge erred in permitting the introduction of hearsay evidence concerning the meaning of the application, and also erred in allowing the introduction of parol evidence to contradict the unambiguous terms of the policy. We do not agree that the trial judge erred in any respect and we affirm his findings and judgment.

Basically, we disagree with the appellant's analysis of the issues involved and the application of the rules of law relied upon by it. We think the real problem is appellant's failure to recognize that the application became a part of the insurance contract between the parties. Appellant looks at its printed policy and says it only provides coverage for loss of hands, feet, or eyes when such loss is caused by accidental bodily injury. So, appellant says, if we assume that the information written in the blank after the word "Other," under "Optional Benefits," was meant to be an application for medical dismemberment benefits, this would only be an offer by the appellee and the policy issued without providing that coverage would be a counteroffer. Therefore, appellant says, the appellee by accepting the policy as delivered accepted the counteroffer, and the contract thus made is the coverage contained in the printed policy only.

This analysis overlooks the fact that the insurance contract between the parties was set out in *both* the printed policy *and* the application. It takes both of them to constitute the contract because the printed policy contains a paragraph, under the heading "Consideration," that states: "The consideration for this policy is the application, a copy of which is attached to *and made a part of the policy*, and the payment of the required premiums." (Emphasis added.) Moreover, the printed policy also contains a paragraph under the heading "General Provisions" that contains the statement, "This policy, including the endorsements and the attached papers, if any, constitutes the *entire contract of insurance*." (Emphasis added.) The application, without question, is physically attached to the printed policy, and the trial court made a specific finding that "the application and the policy to which it is attached constitute the entire contract of insurance." In addition,

Ark. Stat. Ann. § 66-3218 (Repl. 1980) provides:

>Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, indorsement, or application made a part of the policy.

Therefore, even if we agree that there was no contract of insurance between the parties until the appellee accepted a counteroffer made by delivering the policy involved in this case, the counteroffer included the policy with the application attached, so the contract consists of, or is evidenced by, both the printed policy and the attached application. Certainly, Ark. Stat. Ann. § 66-3218, *supra*, requires that the policy be construed as amplified, extended, or modified by the application.

Logically, the next issue presented is whether the trial court erred in allowing the witnesses to testify as to the meaning and purpose of the information written in the application blank after the word "Other." Appellant concedes that where the meaning of a written contract is ambiguous, parol evidence is admissible to explain the writing. *C. & A. Construction Co., Inc. v. Benning Construction Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974); *Kerr v. Walker*, 229 Ark. 1054, 321 S.W.2d 220 (1959). However, the appellant says "assuming for argument, that the application forms a part of the policy in this case, the notation under 'Other' merely explains the benefits available for accidental dismemberment and creates no ambiguity."

*Webster's New Collegiate Dictionary* (1981), defines *ambiguous* as (1) "doubtful or uncertain," or (2) "capable of being understood in two or more possible senses." When we look at that portion of the application which we have set out above and when we consider the fact that the printed policy specifically states that it will pay benefits for *accidental* injury resulting in the loss of feet, hands, or eyes, the meaning of the application language requesting "other" "optional benefits" for the loss of fee, hands, or eyes appears to be uncertain. Although appellant contends the language is "clearly an explanation of the accidental dismemberment provision," it seems strange that an "explanation" of what is provided in the printed policy would be written by hand on blank lines in the application for the printed policy.

The blank lines after the numbers 10 thru 13 are obviously intended for use in designating the insurance coverage applied for. Item 13, "Optional Benefits," provides blanks in which the amount of coverage applied for may be recorded for (a) In Hospital Expense, (b) Accident Medical Expense, and (c) Accidental Death and Dismemberment. Then comes (d) which contains a blank following the word "Other." It would certainly seem that "Other" would be used to record something different from the information above it. There would be no need to use that blank to request the same coverage already requested. Since the blank at 13(c) was used to request Accidental Death and Dismemberment coverage in the amount of $10,000.00, then it must reasonably follow that the blank at 13(d) was used to request some other kind of coverage.

But the request in 13(c) for Accidental Death and Dismemberment coverage in the amount of $10,000.00 was sufficient to also obtain coverage for loss of feet, hands, or eyes caused by accidental injury. This is true because the printed policy contains a page headed "Accidental Death or Dismemberment" which provides in minute detail that the "Principal Sum" will be paid for accidental bodily injury resulting in loss of life, both hands, both feet, one hand and one foot, both eyes, or one hand or foot and one eye. The provision continues and states that one-half of the "Principal Sum" will be paid if the accidental injury results in the loss of one hand, one foot, or one eye. The "Principal Sum" is said to be the amount set out on page 3 of the printed policy and it is the same amount—$10,000.00—inserted in the blank for item 13(c) of the application. Again, there was no need to use item 13(d) to request the same coverage that was requested in 13(c). Surely 13(d) was used for some other purpose. The application was made a part of the printed policy and together they constitute the contract sued upon. We think there is an ambiguity in that contract and that parol evidence was properly admitted to explain the purpose and meaning of the language in item 13(d) of the application.

A somewhat analogous situation existed in *Tribble* v. *Lawrence*, 239 Ark. 1157, 396 S.W.2d 934 (1965), where the purchaser of a washing machine signed a provision on the face of the conditional sale contract that evidenced his election to include in the purchase price the cost of property insurance on the

machine. However, the back of the contract contained a provision stating that the buyer agreed to keep the machine insured. In holding that the interpretation of the conflicting clauses was for the jury to decide, the Arkansas Supreme Court quoted from *Fort Smith Appliance & Service Co.* v. *Smith*, 218 Ark. 411, 236 S.W.2d 583 (1951), as follows:

> In our opinion the contract is not so clear and free of ambiguity that the court could say what it meant as a matter of law. In a situation of this kind it must be left to a jury to determine what was the intention of the parties.

■ We discuss briefly two other contentions advanced by the appellant. The first one is that Ark. Stat. Ann. § 66-3604 (Repl. 1980) prevents the application from becoming a part of the insurance contract between the parties. That statute simply provides that insurance policies shall contain the following provision:

> Entire Contract; Changes: This policy, including the indorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the insurer and unless such approval be indorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

The printed policy in this case contained a provision in substantial compliance with the statute; however, we do not see how it benefits appellant in this case. The provision in the policy substituted "President or Secretary of the Company" for the words "executive officer of the insurer" used in the statute. The printed policy was signed by both the president and secretary of the company. The application was attached to the printed policy and together they became the insurance contract—the policy—in this case. *This* policy was never changed. Therefore, there was no violation of Ark. Stat. Ann. § 66-3604, *supra*.

■ The last contention we need to discuss is that the testimony of what the *other* agent told appellee, when the policy was sold and delivered, was hearsay and inadmissible. We do not agree. While the record is not always clear as to which agent was talking to appellee, it is clear that both of them were telling the

appellee what the president of the company had told them as to the meaning of the language written in the blank of the application's item 13(d). The statements of the president of a corporation, made in reference to business of the corporation that he is authorized to manage, are admissible against the corporation. *Heard* v. *Farmers' Bank of Hardy*, 174 Ark. 194, 207, 295 S.W. 38 (1927). *See also* Unif. R. Evid. 801(d)(2)(iv); *Missouri Pacific Railroad Co.* v. *Arkansas Sheriff's Boys' Ranch*, 280 Ark. 53, 62, 655 S.W.2d 389 (1983).

Affirmed.

CRACRAFT, C.J., CORBIN and GLAZE, JJ., dissent.

TOM GLAZE, Judge, dissenting. Appellee's case undoubtedly involves a tragic situation, and there is no member on this court who does not have sympathy for appellee in the loss of his feet. That loss and disability, of course, resulted from his circulatory problems, not an accident. On this point, we have no dispute.

In the majority's efforts to allow benefits to appellee under these tragic circumstances, it has permitted appellee to introduce parol testimony which changed what clearly was an accidental death, dismemberment and medical expense policy into an accident *or* sickness policy. The subject policy provisions covering dismemberments mention only losses resulting from an accidental cause. *No* provisions exist whatsoever that describe benefits for such losses caused by sickness. Nonetheless, the trial court and this court's majority have decided that a trainee—not even an agent—for appellant's predecessor company which issued the policy could testify to conversations that purportedly took place when the policy was issued some fourteen years ago. In essential part, the then-trainee, Carl Miller, was allowed to testify that the president of the insurance company instructed the trainees and others that "the kind of policy involved in this case would cover the loss of limbs, no matter what happened, sickness or accident."

Miller's recollection of what was said fourteen years ago when the subject policy was issued should not have been allowed, if for no other reason, because the policy clearly provided it constituted the entire contract which could not be changed or its provisions waived by an agent—much less a trainee. *See Apco Oil Company* v. *Stephens*, 270 Ark. 715, 606 S.W.2d 134 (Ark. App.

1980) (the court held any oral or other prior or contemporaneous agreement between the parties become merged into the written instrument and parol evidence is not admissible to vary the terms of the writing in that manner).

Importantly, the appellee in no way asserts the appellant or its predecessor company was guilty of fraud, so to prevail in his claim for benefits, his entitlement must rise or fall upon the contract or policy terms. Because the policy, as I have described, covers only loss of members caused by an accident and because the policy constitutes the parties' entire contract, appellee simply cannot prevail since his amputations resulted from sickness.

The majority suggests that Miller's testimony was permissible to explain an ambiguity which resulted from information supplied and written in Item 13 of appellee's application form under the caption "Optional Benefits." It reasons the amount of coverage, $10,000.00, for *accidental* death and *dismemberment* was set forth in Item 13c, so the immediately following Item d, captioned "Other," must have been intended by the parties to include a different kind of coverage than that just mentioned in Item 13c. Quite simply, Item 13d merely explains Item 13c by specifying the appellee would receive $10,000.00 for the accidental loss of both feet, hands or eyes but would be limited to $5,000.00 for one foot, hand or eye. The majority argues that to construe Items c and d together would be redundant because the policy at page three sets forth the amounts of coverage for certain dismemberment losses resulting from an accidental cause; thus, it concludes Item d had to have been completed with some other kind of coverage in mind, *viz.*, loss of feet, hands or eyes as a result of sickness. Such a supposition is a quantum leap with nothing in the printed policy or application to substantiate it.

Again, there are no provisions in the insurance policy which allude to dismemberments which result from an illness, and short of allegations of fraud and deceit, I fail to see how any legitimate argument can be made that the policy issued can provide any benefits except for a dismemberment that results from an accidental cause. While the printed policy, itself, set forth the amount of coverage for specified dismemberments arising from

an accident, one can hardly say it was redundant or needless to specify this same coverage in the application form. After all, the application had been completed before and made a part of the policy after it was issued.

Even if I were constrained to find an ambiguity in the policy and application—which I am not—I would still have difficulty in legitimating benefits awarded for medical dismemberments when the policy—throughout its provisions and terms—refers only to coverage resulting from accidental causes.

I am compelled to disagree with the majority and would reverse and dismiss this cause.

CORBIN, J., joins in this dissent.