**Charles FORREST and Tammy Forrest, Husband and Wife, Plaintiffs,**

v.

**NORTHLAND CASUALTY COMPANY, Defendant.**

No. 01–2322.

United States District Court, W.D. Arkansas, Fort Smith Division.

Aug. 1, 2002.

David L. Rush, Rush, Rush & Cook, Paris, AR, for Plaintiffs.

Aaron Linzy Mitchell, Frank M. Kennedy, Thompson, Coe, Cousins & Irons, LLP, Dallas, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER

DAWSON, District Judge.

The Plaintiffs instituted this action in state court, seeking to recover insurance proceeds under a policy issued by Defendant for certain property owned by Plaintiffs that was destroyed by fire. Defendant removed the action to this Court based on diversity jurisdiction. (Doc. 1.) Currently before the Court are the parties' cross-motions for partial summary judgment. (Docs. 9, 12.) Also before the

Court is Defendant's motion to strike Plaintiffs' "summary judgment proof." (Doc. 15.) For the reasons stated below, Defendant's motion for partial summary judgment is GRANTED and Plaintiff's motion DENIED. Defendant's motion to strike Plaintiff's summary judgment proof is DENIED as moot.

The following facts are not disputed. On June 1, 2001, Defendant issued an insurance policy covering three poultry houses and equipment owned by Plaintiffs. While the application Plaintiffs submitted to obtain the insurance policy specifies the separate value of each poultry house and its equipment (Doc. 12 Ex. B), the policy itself does not; rather, it merely sets an overall policy limit of $370,000 for "blanket buildings and equipment." (Doc. 12 Ex. C "Commercial Property Coverage Part Declarations") The policy is therefore considered a "blanket policy." *See* 6 Appleman, *Insurance Law & Practice,* § 3912 (a blanket policy is one written upon a risk as a whole, embracing whatever articles or items are included therein, often changing in nature, as compared to a specific policy, which allocates the amount of risk in stated values upon the several items embraced in the coverage). The policy provides that the replacement cost for any loss or damage is not recoverable unless the property is actually repaired or replaced as soon as reasonably possible after the loss or damage. If this is not done, then only the actual cash value, which takes depreciation into account, is recoverable. (Doc. 12 Ex. C ¶ E.7.a.; ¶ G.3.)

On July 1, 2001, one of the poultry houses was completely destroyed by fire. Plaintiffs made a claim under the policy and the Defendant calculated payment by determining the replacement cost of the poultry house and its equipment at the time of the loss, which it estimated to be $171,000, and depreciation was then deducted as the Plaintiffs had not rebuilt.

The actual cash value was determined to be $97,256. Defendants added $7,000 for debris removal, which was also covered under the policy, subtracted the $1,000 deductible, and made a total payment of $103,256 to the Plaintiffs.

Plaintiffs contend that the insurance policy application values the specific poultry house destroyed in the fire at $162,000, and that they are entitled to the $58,744 difference in the amount Defendant paid. Plaintiffs argue that the application "must become a part of th[e] [insurance] contract" and that under Arkansas' valued policy law, they are entitled to the full $162,000, because the poultry house was totally destroyed.

The valued policy law requires insurers to pay the full amount stated in the policy or the full amount for which the company collects premiums in cases "of a total loss by fire or natural disaster of the property insured." Ark.Code Ann. § 23–88–101. A "valued policy" is one where the value of the insured property is agreed to by the parties in the contract in advance. *See St. Paul Fire & Marine Ins. Co. v. Griffin Constr. Co.,* 338 Ark. 289, 993 S.W.2d 485, 487 (1999). The valued policy law is intended to relieve the insured of the burden of having to prove the value of the property after its total destruction and to prevent insurance companies from receiving premiums on overvaluations and then applying policy limitations concerning valuation when the property is destroyed. *See Underwriters at Lloyd's v. Pike,* 812 F.Supp. 146, 148 (1993).

Plaintiffs do not argue that they are entitled to the full $370,000 policy limit, as only one of the three poultry houses was destroyed. Plaintiffs rather argue that they are entitled to the $162,000 figure specified in the insurance application as the value of the destroyed poultry house and equipment. Plaintiffs cite Arkansas

Code Annotated 23–79–119(a) for the proposition that the application is part of the insurance contract and that the $162,000 figure therefore constitutes the value agreed upon by the parties. Section 23–79–119(a) provides that an insurance contract is to be construed "according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application *made a part of* the policy." (emphasis added). In our instant case, the application is not attached to the policy, nor is there any language in the policy incorporating the application. Accordingly, the application is not *"a part of"* the policy and there is no agreed-to value for the destroyed property. *Cf. American Pioneer Life Ins. Co. v. Allender,* 18 Ark.App. 234, 713 S.W.2d 249, 251 (1986) (*en banc*) (application found to be part of insurance contract where policy contained language stating, "The consideration for this policy is the application, a copy of which is attached to and made a part of the policy, and the payment of the required premiums").

■ Plaintiffs alternatively argue that even if the application is not part of the insurance contract and there is no agreed-to value in the contract, Defendant should be "estopped as a matter of law from ascertaining any value of the building other than" the $162,000 figure reflected in the application since the application was completed only a month prior to the fire and the parties agreed on that value then. However, the $162,000 figure reflected within the application is the replacement cost and does not take depreciation into account. In calculating Plaintiffs' payment, Defendant assessed $171,000 as the replacement value for the destroyed poultry house and equipment, which was higher than the application figure. Under the terms of the policy, however, Plaintiffs were not entitled to the replacement cost because they did not rebuild. The policy

specifically states that in such circumstances, only the actual cash value, which takes depreciation into account, is payable. Accordingly, Defendant properly paid Plaintiffs on an actual cash value basis.

In an affidavit attached to Plaintiffs' summary judgment motion, Plaintiff Tammy Forrest states, "We were informed and told that [$162,000] was the least value for which we could insure the building." (Doc. 12 Ex. A ¶ II). She further states, "It is and has been our understanding that ... should we have a total loss of our poultry house, we would get the value of the insurance as established by the [$162,000] amount placed in our application. It is further our understanding that we paid a premium based upon that amount of coverage for the poultry house that was burned." (Doc. 12 Ex. A ¶ IV.) Defendant moves to strike these portions of the affidavit, objecting that the statements about what Plaintiffs were "informed and told" constitute hearsay and that the statements about Plaintiffs' unilateral understanding of the nature of the policy are irrelevant.

Even if considered, Plaintiff's statements do not alter the outcome and Defendant's motion to strike is denied as moot. Assuming Plaintiffs were informed that $162,000 was the least value for which they could insure the poultry house, this does entitle Plaintiffs to recover that amount in the event of a loss. As reflected above, the policy states that only the actual cash value, not the replacement value which the $162,000 figure represents, is payable if the insured property is not rebuilt.

Plaintiffs' "understanding" that they would receive the $162,000 figure in the application is contrary to the plain language of the policy, *see Elam v. First Unum Life Ins. Co.,* 346 Ark. 291, 57 S.W.3d 165, 169 (2001) (if language of the policy is unambiguous, court must give effect to its plain language), and there are

no circumstances warranting reformation of the contract. A contract may be reformed to comport with a party's understanding of it only if there was a mistake on that party's part accompanied by fraud or other inequitable conduct of the other party. *See Mikus v. Mikus,* 64 Ark.App. 231, 981 S.W.2d 535, 538–39 (1998).

Plaintiffs do not allege fraud or other inequitable conduct on Defendant's part which led to Plaintiffs' mistaken understanding of the insurance contract. It appears that Plaintiffs misunderstood the significance of the $162,000 value stated in the application for the destroyed poultry house. The Court notes that the application specified a value for the other two poultry houses covered under the policy as well and that with blanket policies such as the one in this case, a statement of values of the individual pieces of property collectively insured is commonly furnished for the purpose of arriving at an average rate for the policy. *See Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.,* 176 F.3d 794, 798 (4th Cir.1999).

Based on the foregoing, Defendant's motion for partial summary judgment is GRANTED and Plaintiff's motion DENIED. Defendant's motion to strike Plaintiff's summary judgment proof is DENIED as moot. The parties indicate that there remain factual issues in dispute concerning Plaintiffs' loss of business income. This claim will proceed to trial as scheduled on August 26, 2002.