JOHN B. MAY CO., INC., v. DORIS McCASTLAIN
(B. BRYAN LAREY) COMMISSIONER OF REVENUES,
STATE OF ARKANSAS

5-4453                                         426 S. W. 2d 158

Opinion delivered April 1, 1968

*Floyd Sharp,* for appellant.

*Lyle Williams, L. Phillip McClendon* and *Hugh L. Brown,* for appellee.

J. FRED JONES, Justice. This is an appeal from a declaratory judgment decree of the Pulaski County Chancery Court and involves the interpretation of two sections of the Arkansas Gross Receipts Tax Act (Act 386 of 1941).

On March 18, 1966, John B. May Company, Inc. entered into a construction contract with the Board of Trustees of the University of Arkansas to install air-conditioning equipment and perform other construction work at the University of Arkansas Medical Center in Little Rock, Arkansas. Under a provision in the contract, the Arkansas Gross Receipts (Sales) Tax of 3% was not added to, or included in, the original bid price, but it was agreed that if it should later become necessary for the May Company to pay such tax on the materials and equipment used in fulfilling this contract, the contract would be reopened and the amount of the tax added to the original price.

Under an administrative ruling by the Commissioner of Revenues, the equipment was held taxable as a consumption by the contractor. The parties to the contract joined in a petition to the Pulaski County Chancery Court for a declaratory judgment naming the appellee, Commissioner of Revenues, as defendant. The Commissioner responded to the petition and the case was submitted to the chancellor on an agreed stipulation of facts, which included the stipulation that the University Medical Center is a ´State-owned, tax-supported hospital.

The chancellor found that under the contract involved, contractor May was not an agent of the Medical Center but that under the Act he was the consumer of all machinery and goods used in the performance of a contract, and that the assessment of the tax against him

was valid and legal. From the chancellor's decision John B. May Co. appeals.

The definition section of the Gross Receipts Act (Ark. Stat. Ann. § 84-1902 [Repl. 1960]) subsection (i) provides as follows:

"Consumer—User: The term 'consumer' or 'user' means the person to whom the taxable sale is made, or to whom taxable services are furnished. All contractors are deemed to be consumers or users of all tangible personal property including materials, supplies and equipment used or consumed by them in performing any contract and the sales of all such property to contractors are taxable sales within the meaning of this act."

The exemption section of the act (Ark. Stat. Ann. § 84-1904 [Repl. 1960]) provides as follows:

"There is hereby specifically exempted from the tax imposed by this act the following:

\*    \*    \*

(p) Gross receipts or gross proceeds derived from the sale of any tangible personal property or services as herein specifically provided to any hospital or sanitarium operated for charitable and nonprofit purposes; provided, however, that gross proceeds and gross receipts derived from the sale of materials used in the original construction or repair or further extension of such hospital or sanitarium, *except State-owned, tax-supported hospitals and sanitariums,* shall not be exempt from this act; *provided that no unpaid tax imposed by Act 386 of 1941 on the gross receipts or gross proceeds derived from the sale of such materials to State-owned and tax-supported hospitals and sanitariums shall be collected after the passage of this Act* [February 19, 1947]." [Italicized portions added to Act 386 of 1941 by amendment Act 102 of 1947.]

Appellant argues that it was the plain legislative intent, by Act 102 of 1947, to exempt State-owned, tax-supported hospitals and sanitariums from paying the sales tax on construction materials, either directly or indirectly; that the Legislature knew that such institutions were required by law to let such construction contracts to the lowest responsible bidder; that it was the intention of the Legislature by Act 102 of 1947 to repeal the definition of a contractor as a consumer whenever said contractor is doing business with a State-owned, tax-supported hospital or sanitarium; that the contractor, for purposes of the tax exemption, is nothing more or less than an agent of the tax exempt institution, buying and installing specified material and equipment for them at an agreed price; and that if it is held otherwise, Act 102 of 1947 will become a complete nullity.

Appellee argues that the intention and effect of Act 102 of 1947 was to provide an exemption only on sales made directly to State-owned, tax-supported hospitals and sanitariums; that the Act declares a contractor to be a consumer of goods used in his contract; and that the exemption doesn't apply to contractors.

We agree with the appellee and have reached the conclusion that the chancellor's decision must be affirmed. In determining the legislative intent, we look to the language of the whole Act. *Tolleson* v. *McMillan,* 192 Ark. 111, 90 S. W. 2d 990. If the language is ambiguous or uncertain, we may also look to the subject matter of the Act, the object to be accomplished, or the purpose intended, as well as other extrinsic matters which shed light on the legislative intent. *McDonald* v. *Wasson,* 188 Ark. 782, 67 S. W. 2d 722. But, in the case at bar, we find no ambiguity.

Prior to the amendment by Act 102 of 1947, § 84-1904 (p), supra, exempted receipts or proceeds derived from the sale of any tangible personal property or services to any hospital or sanitarium operated for charita-

ble or nonprofit purpose, but specifically did not exempt the sale of materials used in the original construction or repair or further extension of such hospital or sanitarium. By the amendatory Act 102 of 1947, the Legislature excepted the State-owned, tax-supported hospitals and sanitariums from the proviso·of the Act taxing the materials used in the construction, repair, or further extension of charitable nonprofit hospitals and sanitariums, thus making the State-owned, tax-supported hospitals and sanitariums exempt in cases of sales to such hospital or sanitarium for original construction, repair, or further extension.

In construing tax exemption statutes strictly, as we must do (*Scurlock, Comm. of Rev.* v. *Henderson,* 223 Ark. 727, 268 S. W. 2d 619), we conclude from the wording used by the Legislature that the sale must be directly *to* such hospital or sanitarium to be exempt. This interpretation is further supported by the legislative wording in the proviso added by Act 102 of 1947, that no unpaid tax on receipts or proceeds derived from the ''sale of such materials *to* State-owned, tax-supported hospitals and sanitariums shall be collected after the passage of this Act.''

Thus, the statute in clear and unambiguous terms requires the sale to be directly to the tax-exempt institution. Appellant contends that the contractor in this case is merely an agent of the institution, buying and installing specified material and equipment at an agreed price, and thus the sale would be *to* the institution. We cannot agree with this contention in light of § 84-1902 (i), supra. To do so would imply an agency when the Act clearly makes the contractor the consumer of ''all tangible personal property including materials, supplies and equipment used or consumed by them in performing any contract. . . .''

This same contention was advanced and rejected in the case of *Alabama* v. *King & Boozer,* 314 U. S. 1, 62

S. Ct. 43, 86 L. Ed. 3, where King and Boozer sold lumber on the order of contractors to be used by the latter in constructing an army camp for the United States. The Alabama Supreme Court had found the sale nontaxable, concluding that although the contractors were indebted to the seller for the purchase price of the lumber, they were so related by their contract to the Government's undertaking to build a camp, and were so far acting for the Government in the accomplishment of the governmental purpose, that the tax was in effect "laid on a transaction by which the United States secures the things derived for governmental purposes," so as to infringe the constitutional immunity. The U. S. Supreme Court reversed, stating:

> "[T]he contractors were to purchase in their own names and on their own credit all the material required, unless the Government should elect to furnish them; that the Government was not to be bound by their purchase contracts, but was obligated only to reimburse the contractors when the materials purchased should be delivered, inspected and accepted at the site.

*    *    *

> [T]he legal effect of the transaction which we have detailed was to obligate the contractors to pay for the lumber. The lumber was sold and delivered on the order of the contractors, which stipulated that the Government should not be bound to pay for it. It was in fact paid for by the contractors, who were reimbursed by the Government pursuant to their contract with it. The contractors were thus purchasers of the lumber, within the meaning of the taxing statute, and as such were subject to the tax. They were not relieved of the liability to pay the tax either because the contractors, in a loose and general sense, were acting for the Government in purchasing the lumber or, as the Alabama Supreme Court seems to have thought, because the economic

burden of the tax imposed upon the purchaser would be shifted to the Government by reason of its contract to reimburse the contractors.

\* \* \*

But however extensively the Government may have reserved the right to restrict or control the action of the contractors in other respects, neither the reservation nor the exercise of that power gave to the contractors the status of agents of the Government to enter into contracts or to pledge its credit."

Appellant also contends that § 84-1902 (i); supra, pertains only to hand tools, construction equipment, etc. The *King & Boozer* case, supra, also refutes this argument. It could hardly be said that the lumber involved in that case fits in the category of hand tools, construction equipment, etc., but, to the contrary, it is clearly seen that lumber in that case, as air conditioners in the case at bar, becomes an integral part of the construction, yet is consumed by the contractor, for taxation purposes, in fulfilling his contract.

Even though Act 102 of 1947 contained a clause providing for the repeal of "all laws and parts of laws in conflict herewith," we find no inconsistency between § 84-1902 (i) and § 84-1904 (p). Thus, there is no repeal thereby as appellant urges, as a general clause repealing all laws in conflict does not operate to repeal any laws not in conflict. *Jones* v. *Oldham*, 109 Ark. 24, 158 S. W. 1075.

Appellant also contends that the chancellor erred in failing to properly interpret the cases of *Kern-Limerick* v. *Scurlock*, 347 U. S. 110, 74 S. Ct. 403, 98 L. Ed. 546, which arose in Arkansas (see *Parker* v. *Kern-Limerick, Inc.*, 221 Ark. 439, 254 S. W. 2d 454 and 223 Ark. 464, 266 S. W. 2d 298), and *Alabama* v. *King & Boozer*, supra. In his brief, appellant states that: "A study of the *Parker* v. *Kern-Limerick* case shows the

final decision to be that where a Government Agency has a statutory sales exemption that a contractor, though defined as a consumer, becomes an agent for the owning agency for the tax exemption purposes.'' We find that it is the appellant's interpretation, and not the chancellor's, that is incorrect. The *King & Boozer* case refused to *imply an agency for purchase* into the contract. In the *Kern-Limerick* case an agency for purchase was expressly created by the terms of the contract. Both cases recognized the same economic effect on the United States, but found the difference in the result to lie in the form of the contract. As stated in the *Kern-Limerick* case:

> ''Under these circumstances, it is clear that the Government is the disclosed purchaser and that no liability of the purchasing agent to the seller arises from the transaction. [This was found to be the opposite in the *King & Boozer* case.]

> \*     \*     \*

> We find that the purchaser under this contract was the United States. Thus, *King & Boozer* is not controlling for, though the Government also bore the economic burden of the state tax in that case, the legal incidence of that tax was held to fall on the independent contractor and not upon the United States.

> ''*But since purchases by independent contractors of supplies for Government construction or other activities do not have federal immunity from taxation, the form of contracts,* when governmental immunity is not waived by Congress, *may determine the effect of state taxation on federal agencies,* for decisions consistently prohibit taxes levied on the property or purchases of the Government itself.'' (Emphasis supplied.)

The latter proposition was equally stated in the *King & Boozer* case:

"The soundness of this conclusion turns on the terms of the contract and the rights and obligations of the parties under it."

The appellant in the case at bar was not made an agent for the purchase of materials as was done in the *Kern-Limerick* case where the contract called for the contractor to act as purchasing agent for the Government, and title to the articles purchased passed directly from the vendor to the Government, and the Government was directly liable to the vendor for payment of the purchase price. These elements are not persent in the case at bar.

We agree with the chancellor's finding that the relationship in the case at bar was one of independent contractor, not agency, and therefore the appellant was a consumer, or user, of the items involved within the meaning of the Act. The chancellor was correct in finding that the sale was to the contractor in this case and in holding that the sale to the contractor was taxable. The decree of the chancellor is affirmed.