W. William GRAHAM, Jr., On Behalf of Himself and Other Taxpayers and W. William Graham, Jr., Inc. *v.* FORREST CITY HOUSING AUTHORITY

90-319                                                803 S.W.2d 923

Supreme Court of Arkansas
Opinion delivered February 25, 1991.
[Rehearing denied April 1, 1991.]

*Wright, Lindsey & Jennings*, by: *David M. Powell* for appellant.

*Butler, Hicky and Long*, by: *Fletcher Long Jr.*, for appellee.

TOM GLAZE, Justice. In September of 1990, the appellee, Forrest City Housing Authority, advertised a Request for Proposals (RFP) from engineering firms to prepare construction bid documents to correct a soil erosion problem in public housing facilities in Forrest City. Under the terms of the RFP, firms interested in the project were required to submit, along with other information, an estimated price for their services in order for them to be considered for the contract.

Appellant filed an action for declaratory judgment and injunctive relief on October 8, 1990, asserting that any consideration of price prior to negotiations with the most qualified firm was in violation of Act 616 of 1989, codified as Ark. Code Ann. §§ 19-11-801 to -805 (Supp. 1989). Act 616 prohibits the use of

competitive bidding in the procurement of professional services, including engineering services, by any political subdivision of the state. The chancellor below found that the RFP did not violate Act 616's prohibition against competitive bidding and denied appellant's request for injunctive relief. We reverse.

The legislative policy behind Act 616 is stated very succinctly as follows:

> It is the policy of the State of Arkansas and political subdivisions that the state and political subdivisions shall negotiate contracts for legal, architectural, engineering, and land surveying services on the basis of demonstrated competence and qualifications for the type of services required and at fair and reasonable prices and *to prohibit the use of competitive bidding for the procurement of professional services.* (Emphasis added.)

Ark. Code Ann. § 19-11-801 (Supp. 1989).

The act further specifically provides that a political subdivision "shall not use competitive bidding for the procurement of professional services of a lawyer, architect, engineer, or land surveyor." Ark. Code Ann. § 19-11-802(c) (Supp. 1989). Instead of competitive bidding, Act 616 requires firms to be evaluated and ranked solely on the basis of qualifications and capability to perform the desired work. The most qualified firm is then given the opportunity to negotiate a contract for the services at a fair and reasonable price. Ark. Code Ann. §§ 19-11-803 -804 (Supp. 1989).

■ The basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the legislature. *Holt* v. *City of Maumelle*, 302 Ark. 51, 786 S.W.2d 581 (1990); *In Re Adoption of Perkins/Pollnow*, 300 Ark. 390, 779 S.W.2d 531 (1989). Further, when the wording of a statute is clear and unambiguous, the statute will be given its plain meaning. *Cash* v. *Arkansas Comm'n on Pollution Control & Ecology*, 300 Ark. 317, 778 S.W.2d 606 (1989).

There is no mistaking the intention of the legislature in this instance. Act 616 expressly and unequivocally prohibits the use of competitive bidding in the procurement of professional engineering services. It also prohibits the consideration of price in the

procurement of professional services until the most qualified firms have been selected and negotiations have begun with the best qualified firm. *See*, Ark. Code Ann. § 19-11-804.

The term "bid" generally refers to an offer to perform a contract for work and labor or supplying materials or goods at a specified price. *Black's Law Dictionary* 147 (5th ed. 1979); *see also United States* v. *Farina*, 153 F.Supp. 819 (D.C.N.J. 1957). Furthermore, competitive bidding is defined as bids which are submitted as a result of public notice and advertising of an intended sale or purchase. *Black's Law Dictionary* at 257. In the present case, appellee's intended need was to acquire professional engineering services.

■ Here, the RFP advertised by appellee was clearly in the form of a solicitation for competitive bids. The RFP specifically reflects that responding engineering firms would be selected based on qualifications plus "price-based" criteria and that firms would be evaluated on the basis of "technical factors, including price." Further, according to the express language of the RFP, appellee would select the most responsible firm "whose proposal is most advantageous to the program, with price and other factors considered." Finally, the RFP set out seven "evaluation factors" and provided that any interested engineering firm must respond to each of those factors in order to be considered for the contract. One of those factors is price. There is no question that the RFP advertised by appellee is, on its face, in direct contravention of the legislature's prohibition against competitive bidding for professional services.

Appellee argues, however, that any defect in the RFP is cured by the fact that price is not actually considered in ranking the top firms, and none of the firms are held to the quoted price once negotiations begin. Appellee also argues that this procedure is not in the nature of competitive bidding because it is not required to accept the lowest responsible bid as is the case in ordinary competitive bidding situations.

In the first place, if it is true that the prices submitted are not considered in ranking the firms, and ranked firms are not held to the prices submitted, then the notice requirement of submitting prices is rendered a nullity. In these circumstances, appellee offers no justifiable reason for employing an advertisement that

facially violates the law by requiring price submissions prior to negotiations.

Further, appellee is, of course, correct in its assertion that it is not required to accept the lowest bid. That is exactly the scenario the legislature sought to avail when it passed Act 616. Presumably, the legislature wanted professional services to be procured on the basis of qualifications above all else without consideration of price until the firms were ranked and negotiations had begun. The interjection of price at any time prior to selecting the most qualified firms would seriously undermine this goal.

It should be noted that Act 616 does not require a political subdivision to accept the price finally offered by the most qualified firm during negotiations. The Act specifically provides for termination of negotiations with the top firm if the contracting authority is unable to negotiate a contract it considers fair and reasonable. The contracting authority then proceeds to the next most qualified firm and begins negotiations anew. *See* Ark. Code Ann. § 19-11-805. This process allows the contracting authority to negotiate the most fair and reasonable price with the most qualified firm in accordance with the stated policy of the legislature.

We reverse and remand with directions that appellee be enjoined from taking action regarding any proposals or contracts related to the advertisement of competitive bidding held contrary to law as discussed herein.