Russ STOCKTON *v.* SENTRY INSURANCE,
A Mutual Company

98-1418 989 S.W.2d 914

Supreme Court of Arkansas
Opinion delivered May 13, 1999

508

*Smith, Maurras, Cohen, Redd & Horan, PLC,* by: *Matthew Horan,* for appellant.

*Cross, Gunter, Witherspoon & Galchus, P.C.,* by: *M. Stephen Bingham,* for appellees.

LAVENSKI R. SMITH, Justice. This case involves six causes of action, all of which arise from a business relationship between appellant, Russ Stockton, and appellee, Sentry Insurance. They include the Franchise Practices Act, outrage, breach of contract, interference of contract, negligence, and battery. Appellant contends the trial court erred in dismissing all of his claims against appellee by summary judgment. As to three causes of actions, we agree and therefore reverse and remand as to those claims. We affirm the remainder of the trial court's judgment.

This is the second appeal of this matter to this court and comes to our attention again pursuant to Ark. Sup. Ct. R. 1-2(a)(7). We dismissed the first appeal, and therefore did not reach its merits because the order appealed from did not constitute a final order in conformity with Ark. R. Civ. P. 54(a). *Stockton v. Sentry Ins.*, 332 Ark. 417, 965 S.W.2d 762 (1998).

The underlying facts of this case are briefly summarized in our prior opinion. *Stockton, Id.* at 418. Following dismissal of the earlier appeal, Stockton amended and verified his complaint in April 1998. The amended complaint contained no new causes of action or fact allegations. In response, Sentry and McDuff filed a new motion to dismiss under Ark. R. Civ. P. 12(b)(6). The trial court granted the motion, adopting and adding to the order from the original motion to dismiss. Appellant nonsuited the claim of Melanie Stockton and brings this appeal from the court's second dismissal order. Stockton raises three points on appeal: (1) the verified pleadings state a claim for violation of the Franchise Practices Act; (2) appellant's pleadings alleged sufficient facts to state a claim for outrage, breach of contract, interference of contract, negligence, and battery; and (3) the court misapplied Rule 12(b)(6).

### Standard of Review

The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties.

*Angle v. Alexander,* 328 Ark. 714, 945 S.W.2d 933 (1997); *Wallace v. Broyles,* 331 Ark. 58, 961 S.W.2d 712 (1998).

▮ The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56 (1998); *Robert D. Holloway, Inc. v. Pine Ridge Add'n Resid. Prop. Owners,* 332 Ark. 450, 966 S.W.2d 241 (1998) (citing *McCutchen v. Huckabee,* 328 Ark. 202, 943 S.W.2d 225 (1997); *Estate of Donley v. Pace Indus.,* 336 Ark. 101, 984 S.W.2d 421 (1999).

*Franchise Act*

Appellant characterizes his business relationship with appellee, Sentry Insurance, as a franchisor/franchisee arrangement governed by the Arkansas Franchise Practices Act. The Franchise Act, codified at Ark. Code Ann. § 4-72-201 *et seq.,* defines a franchise as follows:

> "Franchise" means a written or oral agreement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic within an exclusive or nonexclusive territory, or to sell or distribute goods or services within an exclusive or nonexclusive territory, at wholesale, retail, by lease agreement, or otherwise. However, a franchise is not created by a lease, license, or concession granted by a retailer to sell goods or furnish services on or from premises which are occupied by the retailer-grantor primarily for its own merchandising activities.

To establish the existence of a franchise, Stockton alleged that his surrender of commissions and renewals from Dairyland Insurance Company, a Sentry subsidiary, constituted an investment in a franchise license from Sentry. Stockton asserts he gave up his right to receive those monies in order to obtain the right to distribute Sentry's products under its trademark in a defined territory in an Arkansas place of business. Sentry opposes Stockton's franchise claim by offering a copy of a document entitled "Employment Application." The employment application contains typical information requests incident to job seeking including

authorizations for an investigative report and drug testing. The authorization states that all employees would be considered "at-will." The document also included an executed "Sales Representative Employment Contract." This document, in eighteen numbered sections, specifically delineated the parameters of the relationship created by the agreement. In the paragraph numbered two, the following appears:

> The Sales Representative shall be licensed as an agent for those of the companies for whom he transacts business, as required by law. However, he *shall be the employee* of the employer only and shall at all times obey instructions issued to him by, and shall be under the direct supervision and control of, the employer. The Sales Representative shall, within and throughout such territory as is from time to time assigned to him by the employer, (a) *solicit and procure applications for insurance* and (b) render such service to policy holders of each of the companies and perform such other incidental duties as may be from time to time requested by the employer; and the sales representative shall submit each and every such application for insurance to the employer or its appropriate affiliate or subsidiary as directed by the employer, and the *Employer*, or its affiliate or subsidiary, as the case may be, *shall have the absolute right to accept or reject the same.* (Emphasis added.)

■ ■ From the above language it is apparent that the business relationship created by this contract was not a franchise within the meaning of that term in Ark. Code Ann. § 4-72-202(1). We give a liberal construction to the act to effectuate its remedial purposes. *Dr. Pepper Bottling Co. v. Frantz*, 311 Ark. 136, 842 S.W.2d 37 (1992). However, we must still apply its provisions according to their plain meaning. Plainly, the legislature intended the statute to apply where a person grants another person a license to "sell or distribute goods or services within an exclusive or nonexclusive territory. . . ." In *Frantz*, we upheld the trial court's denial of a motion for judgment notwithstanding the verdict. We did so because under the facts of that case, Frantz, the distributor, maintained inventory, had authority to set prices, and maintained a place of business in Arkansas. In the instant case, Stockton maintained no inventory, had no authority to set prices, and could not enter into a binding contract of insurance. Stockton's authority

went no further than to solicit and procure applications for insurance.

 Although not binding on this court, we find the facts and analysis of *Kent Jenkins Sales, Inc. v. Angelo Brothers Company*, 804 F.2d 482 (8th Cir. 1986), more analogous and persuasive for resolving the instant case. Stockton, just as the appellant in *Kent Jenkins Sales*, should be considered a promoter or solicitor of sales rather than an actual seller. The contract language is clear that Stockton's authority was limited to solicitation and procurement of applications. This distinction is crucial and played a substantial role in the reasoning of the court in *Bush v. National School Studies, Inc.*, 139 Wis.2d 635, 407 N.W.2d 883 (1987), a case upon which we relied in *Frantz*. The Illinois appeals court's holding in *Vitkaukas v. State Farm Mut. Auto. Ins.*, 157 Ill. App.3d 317, 509 N.E.2d 1385 (1987) is also persuasive. There, the court held the Illinois Franchise Act inapplicable to an insurance salesman where he had no authority to consummate a sale but could only solicit applications. We therefore hold that the trial court properly dismissed the claim as a matter of law in that no genuine issue of fact existed as to whether appellant had a franchise from Sentry Insurance.

### Outrage and Battery

Appellant's complaint alleges that Sentry committed the torts of outrage and battery largely based upon a series of events occurring following his termination. At the time of Stockton's termination, Sentry informed him of the procedure for extending his dental insurance benefits. Appellant contends he completed the prescribed process and made an appointment to have crowns put on his teeth. Appellant alleges that, in mid-procedure, the dentist stopped because someone on the dentist's staff told the dentist the insurer called and said they would not cover the procedure. The dentist put a temporary plastic cap on his "drilled-off tooth" which caused him discomfort until he could come up with the money to pay the dentist to complete the work. The outrage claim also includes alleged abuse by Appellee McDuff in calling Appellant Russ Stockton's wife and telling her he was a "lazy s.o.b." who wasn't good enough for her, and that he was going to

terminate him while she was pregnant like he had terminated another employee whose wife was terminally ill.

 To succeed on a tort-of-outrage claim, the plaintiff must prove that 1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct, 2) the conduct was extreme and outrageous and utterly intolerable in a civilized community, 3) the defendant's conduct was the cause of the plaintiff's distress, and 4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Hollomon v. Keadle*, 326 Ark. 168, 931 S.W.2d 413 (1996). In *City of Green Forest v. Morse*, 316 Ark. 540, 873 S.W.2d 154 (1994), we examined the history of Arkansas cases involving the tort of outrage arising out of an employee's discharge and stated:

> We have consistently taken a narrow view in recognizing claims for the tort of outrage that arise out of the discharge of an employee. The reason is that an employer must be given considerable latitude in dealing with employees, and at the same time, an employee will frequently feel considerable insult when discharged. In this context we have written: "Because of the employer's right to discharge an at-will employee, a claim of outrage by an at-will employee cannot be predicated upon the fact of the discharge alone. However, the manner in which the discharge is accomplished or the circumstances under which it occurs may render the employer liable." . . . The duty owed is a matter of law, and we have said that duty is to refrain from conduct that is so extreme and outrageous as to go beyond all possible bounds of decency and to be utterly intolerable in a civilized society. *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980). *Unicare Homes, Inc. v. Gribble*, 63 Ark. App. 241 (1998).

Viewing the evidence in the light most favorable to appellant, we hold that his complaint did not state facts sufficient to constitute the tort of outrage. Certainly, if true, these allegations describe unprofessional, inconsiderate, and perhaps unethical conduct. However, without more, we do not find it to be so extreme and outrageous that it is to be considered intolerable in a civilized society. The trial court's dismissal of appellant's outrage claim is affirmed.

■ Stockton also claims Sentry is liable for battery. His complaint alleges battery based upon "the fact that Stockton was obliged to return to the dentist on a second, unnecessary occasion in order to have dental work completed." Stockton's reply brief further contends battery occurred because "he [Stockton] was forced to undergo an interrupted dental procedure without informed consent." Apparently, appellant is attempting to hold Sentry responsible for actions of the dentist based upon appellee's alleged communication with the dentist's office. Even assuming that Stockton's allegations as stated are true, we hold that facts that would constitute the tort of battery on the part of Sentry simply have not been put forth. We, therefore, affirm the trial court's dismissal of the. battery claim.

### *Breach of Contract, Interference of Contract, and Negligence'*

■ The final three causes of actions alleged by Stockton are breach of contract, interference of contract, and negligence. These, as the others, are based, in large measure, upon appellant's version of events surrounding his dental treatment following termination of his relationship with Sentry. However, with respect to these claims we hold that appellant by his affidavit does set forth sufficient facts to create genuine issues of fact. Apparently, the dental insurance contract may have been with a different company than the one which employed Stockton. However, the existence of such a contract, its terms and the consequences of its breach should be further addressed at the trial court level through additional discovery or eventual trial. We also hold that further factual inquiry is warranted with respect to Stockton's negligence claim. We therefore reverse the trial court's dismissal of plaintiff's breach of contract, interference of contract, and negligence claims and remand for further proceedings.

Affirmed in part; reversed and remanded in part.