ST. PAUL FIRE & MARINE INSURANCE COMPANY *v.*
GRIFFIN CONSTRUCTION COMPANY

98-990                                                    993 S.W.2d 485

Supreme Court of Arkansas
Opinion delivered July 1, 1999

[Petition for rehearing denied September 9, 1999.*]

* Brown, J., not participating.

*Bassett Law Firm*, by: *Curtis L. Nebben*; and *Barrett & Deacon*, by: *D.P. Marshall Jr.*, for appellant.

*Rush, Rush, & Cook*, by: *R. Gunner DeLay*, for appellee.

Robert L. Brown, Justice. Appellant St. Paul Fire & Marine Insurance Company appeals a judgment in favor of appellee Griffin Construction Company in the amount of $1,213,426.33. Griffin Construction sued under a builders risk policy issued by St. Paul following the total loss by fire of a building that Griffin Construction was renovating. St. Paul now appeals the judgment and contends that the trial court misapplied the valued policy law, which is set out at Ark. Code Ann. § 23-88-101 (Repl. 1992). We agree, and we reverse the judgment and dismiss.

In 1996, Griffin Construction entered into a contract with the Griffin Family Trust to renovate the Josiah Foster Building, a historic building in downtown Fort Smith. The Trust was the owner of the building. On or about September 9, 1996, Griffin Construction purchased a contractor's and owner's property protection policy from St. Paul for multiple projects with an overall policy limit of $3 million. This policy was titled a "builders risk policy" and covered Griffin Construction's financial interest as a contractor in the various buildings. Griffin Construction reported the estimated value of its interest in the Josiah Foster Building project as $1.5 million. It paid $4,000 to St. Paul as a deposit for the insurance coverage with $938 of that amount being allocated as the premium for the first quarter.

On December 20, 1996, about four months into the work, the Josiah Foster Building was totally destroyed by fire. The renovation project was about twenty percent completed. Griffin Construction filed a claim for losses under its policy, and St. Paul paid $286,573.67. This amount represented the full claim less two items — a custom elevator and iron staircase — which St. Paul refused to pay. The reason for the refusal was that the two items were not destroyed in the fire. Because of the refusal to pay, Griffin Construction filed suit against St. Paul and alleged breach of contract. Griffin Construction sought $61,793.77 in damages plus the 12% penalty and attorney's fees under Ark. Code Ann. § 23-79-208 (Repl. 1992). St. Paul answered that the disputed items were not destroyed by the fire because they were not in the building at the time of the fire. St. Paul then moved for summary judgment. Griffin Construction responded with a cross motion for a summary judgment and a second amended complaint. In its amended complaint, it asked for $2,713,426.37 (the $3,000,000 policy limit minus the paid amounts) or, alternatively, for $61,793.77. Griffin Construction later filed a third amended complaint which deleted any reference to the $61,793.77 and proceeded solely on the claim for the full reported amount of the destroyed project — $1.5 million, which was the reported limit for the Josiah Foster Building project, less the amount already paid by St. Paul. The amount claimed was $1,213,426.33 plus the 12% penalty, attorney's fees, and prejudgment interest.

The trial court denied both parties' motions for summary judgment without comment, and a jury trial followed.

At trial after Griffin Construction put on its case, St. Paul moved for a directed verdict on the basis that the valued policy law did not apply to this coverage and further that the builders risk policy involved was an "open" policy with a weighted premium which did not insure buildings against fire loss. The motion was denied. St. Paul renewed its motion for a directed verdict at the close of all the evidence and added that there was no way to inspect the building to fix its value because prior to renovation, there was nothing to inspect. Again, the motion was denied.

The trial court instructed the jury on the valued policy law as follows:

> There was in force in the State of Arkansas at the time the contract of insurance was entered into between Griffin Construction Company and St. Paul Fire & Marine Insurance Company, a statute, which provided:

> (a) A fire insurance policy, in case of a total loss by fire of the property insured, shall be held and considered to be a liquidated demand and against the company taking the risk, for the full amount stated in the policy, or the full amount upon which the company charges, collects, or receives a premium.

> Griffin Construction Company claims damages from St. Paul Fire & Marine Insurance Company pursuant to this statute and has the burden of proving each of three essential elements:

> First, that there was a fire insurance policy in force on December 20, 1996, which insured its real property located at 222 Garrison Avenue in Fort Smith, Arkansas.

> Second, that there was total loss by fire to the insured building, and

> Third, that St. Paul failed to pay Griffin Construction Company the full amount stated in the policy, or the amount the company received and collected a premium on.

> If you find from the evidence in this case that each of these propositions has been proved, then your verdict should be for Griffin Construction Company.

The jury returned a verdict for Griffin Construction in the amount claimed of $1,213,426.33. St. Paul filed a motion for judgment notwithstanding the verdict and a motion for a new trial. In both motions, St. Paul again argued that the trial court erred in instructing the jury on the valued policy law, which was inapplicable to the policy involved. The trial court denied both motions.

On appeal, St. Paul urges that the trial court erred in ruling that the valued policy law applies to this case. The valued policy law provides:

> (a) A fire insurance policy, in case of a total loss by fire of the property insured, shall be held and considered to be a liquidated demand and against the company taking the risk, for the full amount stated in the policy, or the full amount upon which the company charges, collects, or receives a premium
>
> (b) However, the provisions of this section shall not apply to personal property.

Ark. Code Ann. § 23-88-101 (Repl. 1992).

■ ■   The basic rule of statutory construction is to give effect to the intent of the General Assembly. *See Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998). In construing a statute, it is the court's duty to construe it just as it reads. *Heard v. Payne*, 281 Ark. 485, 665 S.W.2d 865 (1984); *City of North Little Rock v. Montgomery*, 261 Ark. 16, 546 S.W.2d 154 (1977). When we construe a statute, we look first at the plain language of the statute and give the words their plain and ordinary meaning. *See ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998); *Ford Motor Credit Co. v. Ellison, supra.* If the language of a statute is plain and unambiguous, and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *See Office of Child Support Enforcement v. Harnage*, 322 Ark. 461, 910 S.W.2d 207 (1995). Even so, statutes will not be given a literal interpretation if it leads to absurd consequences that are clearly contrary to legislative intent. *See Thomas v. State*, 315 Ark. 79, 864 S.W.2d 835 (1993).

■  As an initial matter, we do not consider this statute to be anything other than plain and unambiguous. *See In re: Adoption of Martindale*, 327 Ark. 685, 940 S.W.2d 491 (1997). A literal reading of the valued policy law shows that it applies to "fire insurance" policies where there has been a total loss of the property insured. The loss to be paid is the full amount stated in the policy or the amount on which premiums are paid. A valued policy is one where the value of the insured property is agreed to by the parties in the contract in advance, and, as a consequence, the insured does not have to prove the actual value of the destroyed property. *See Houston Fire and Cas. Ins. Co. v. Nichols*, 435 S.W.2d 140 (Tex. 1968); 6 J. APPLEMAN, INSURANCE LAW AND PRACTICE § 3827 (1972). It is the uncertainty of the value of the insured property that distinguishes an "open" policy from a "valued" policy. *See Borden v. General Ins. Co. of America*, 59 N.W.2d 141 (Neb. 1953). In the treatise, COUCH ON INSURANCE, a valued policy is described as "one in which the parties have agreed upon the value of the properties insured in the event of future loss," while an open or unvalued policy is one in which the value is not set but is left to be determined in case of loss. *See* LEE R. RUSS AND THOMAS F. SEGALLA, COUCH ON INSURANCE § 1.5 (3d ed. 1997).

■  This court has stated that the purpose behind the valued policy law is to prevent insurance companies from overvaluing real property for premium purposes and then repudiating those values after a fire loss. *See Tedford v. Security State Fire Ins. Co.*, 224 Ark. 1047, 278 S.W.2d 89 (1955). We added in *Tedford*:

> Statutes of this sort are passed for the purpose of avoiding the uncertainty of determining the value after the fire. The manifest policy of the statute is to guard against over-insurance of the property. The agents of the company have the opportunity to inspect the property fully before taking the insurance and fixing the amount of the premiums. It is the *valuation fixed in advance by the parties by way of liquidated damages in case of a total loss by fire* of the property insured without the fault of the insurer.

*Tedford*, 224 Ark. at 1049, 278 S.W.2d at 91 (emphasis added).

■  Griffin Construction first contends that the issue of misapplying the valued policy law is not preserved because St. Paul

failed to object to the valued policy instruction. We disagree. Not only did St. Paul move for a directed verdict on this legal issue as well as file posttrial motions, but it objected to an instruction making the valued policy law a part of every fire insurance policy in the state and defining real property to include improvements. We conclude that the issue is sufficiently preserved.

We turn then to the coverage provided in the insurance policy at issue. The Insurance Binder issued to Griffin Construction on September 10, 1996, described the type of coverage as "Builders Risk." According to Ida C. Hunter, chief financial officer for Griffin Construction, her company reported a value of $1.5 million to St. Paul on the Josiah Foster Building renovation project. This value was confirmed by a Reporting Form introduced into evidence by Griffin Construction. Ida Hunter explained that the $1.5 million figure was an estimate based on the materials to be used in the project plus overhead, including labor. The actual insurance policy was processed on September 17, 1996, and described as an "open" Builders Risk policy.

Under the terms of the policy, it covered Griffin Construction's financial interest in the Josiah Foster Building project plus two other projects. Specifically, it covered the cost of excavation, temporary structures, equipment, and "labor and materials as well as reasonable profit and overhead costs necessary to restore the project to its condition before the loss."

The relevant policy language relating to premiums and payment for losses follows:

> LIMITS OF COVERAGE. The most we'll pay for a covered loss is the applicable limit of coverage shown in the Coverage Summary. The project limit and the catastrophe limit are explained below.
>
> *The project limit* is based on your estimate. We estimate your premium based on what you tell us the full completed value of your project will be. This estimated amount becomes the project limit.
>
> However, the amount we'll pay is not the project limit. The amount we'll pay is determined by the actual cost of the labor and materials you've expended, plus your profits, as determined

at the time of the loss. So the actual limit of coverage on any date will be a percentage of the estimated value.

. . . .

YOUR PREMIUM. You agree to tell us, at the starting date of this agreement, what you know to be the full estimated value of the project so that we can estimate your premium. We estimate your premium because the final completed value of the project may differ from the original estimate of the project costs.

When coverage under this agreement ends, we'll figure the premium we've actually earned based on the length of time this agreement was in effect and the actual completed value of the project. If this final premium is more than you've paid, you'll owe us the difference. If it's less, we'll return the difference.[1]

What is clear to us from the policy language is that the project limit of $1.5 million was an estimate and that the premiums paid are based on that estimate and then adjusted at the time of the project's completion. Moreover, the premium paid was tied to a rate given to Griffin Construction by St. Paul. According to the testimony of David Loveless, the underwriter for St. Paul, the builders risk policy was an "open" policy and involved "completed value reporting," which meant that the premium rate varied with the project's status of completion. The rate is further divided in half by St. Paul at the beginning of the project because no work would have begun on the project, and it would be unfair, Loveless testified, to charge a contractor the rate St. Paul would charge for a completed building. The premium is averaged, said Loveless, in the sense that the contractor is paying a little bit more in premiums at the beginning of the project and a little bit less for the exposure after the project passes its midpoint. Thus, not only is the project value an estimate but the premiums paid are based on a rate which is tied to the status of the project.

---

[1] The insurance coverage was on the construction work by Griffin Construction and did not include coverage on the existing building, which Griffin Construction did not own. Thus, the "Renovation Work" provision of the policy which included a "covered loss to a structure that existed before an insured project began" does not appear to be applicable.

■ We conclude that this builders risk policy is categorically different from the fixed value on fire coverage contemplated by our valued policy law. Far from being a closed policy with an agreed-to value in the event of fire loss, this policy was open with premiums calculated in part based on periodic reporting. In considering our prior cases, we have only applied the valued policy law where the insurance is issued for a fixed amount. *See, e.g., Sphere Drake Ins. Co. v. Bank of Wilson,* 312 Ark. 540, 851 S.W.2d 430 (1993); *Hensley v. Farm Bureau Mut. Ins. Co.,* 243 Ark. 408, 420 S.W.2d 76 (1967); *Tedford v. Security Fire Ins., supra.*

Other jurisdictions are of a similar mind when it comes to the applicability of the valued policy statute to a builders risk policy. *See, e.g., Jones v. State Farm Fire and Cas. Co.,* 740 S.W.2d 708 (Mo. Ct. App. 1987) (under similar statute, Missouri court refused to allow recovery of face amount of policy before building was completed where amount insured depended on percentage of completion); *American General Fire and Cas. Co. v. Buford,* 716 S.W.2d 86 (Tex. Ct. App. 1986) (builders risk policy where amount of coverage was based on completion cost and not agreed-upon value was not a valued policy); *Century Corp. v. Phoenix of Hartford,* 482 P.2d 1020 (Mont. 1971) (policy was intended only to cover remodeling work done on building and not a fixed value; valued policy law not applicable); *White v. New Hampshire Ins. Co.,* 390 N.W.2d 313 (Minn. Ct. App. 1986) (policy covering actual value of building at time of destruction was a builders risk policy and insured not entitled to estimated limit of loss under valued policy law).

Griffin Construction relies on two Arkansas cases to support its argument that the policy involved is a valued policy. *See Farm Bureau Mut. Ins. Co. v. Parks,* 266 Ark. 454, 585 S.W.2d 936 (1979); *Phoenix Assurance Co. v. Loetscher,* 215 Ark. 23, 219 S.W.2d 629 (1949). In *Parks,* the insurer issued a policy with $45,000 in coverage for the insured's home. After a total loss of the home, the insurer defended, arguing that the insured fraudulently represented the value of his home. The insured bought the home and ten lots for $23,000, and a realtor appraised the property at $33,500. The $45,000 figure was based on the insured's plans to remodel the home. Our court affirmed the verdict of

$45,000 in favor of the insured and noted that the insurance agent had the chance to inspect the property prior to issuing the policy but had failed to do so. We view this case as distinguishable because in the instant case there was no completed, renovated building for St. Paul to inspect. Furthermore, the $1.5 million was an estimated amount for the project limit and not the actual value of the project at the time of the fire.

The same holds true with regard to the *Loetscher* decision. In *Loetscher*, the insureds obtained a $12,000 policy which insured their construction of a garage to repair automobiles against fire, tornado, and lightning. The insurance was needed in order to obtain a construction loan. The building was almost complete when it was destroyed by rain and a thunderstorm. This court affirmed the jury's verdict of $12,000, the face amount of the policy, and held that it was unnecessary to consider the contribution clause in the insurance policy. The contribution clause provided that the company was "liable for no greater proportion of the loss than the amount of insurance bore to 100% of the actual value of the building when fully completed and ready for occupancy." The value of the building at time of loss was alleged to be $20,000. We applied our valued policy law and did so because the value for total loss was set in the policy, and the jury had found that a total loss occurred. Those facts differ from the facts before us in the instant case.

We hold that the trial court erred in refusing to direct a verdict on the inapplicability of the valued policy law and further in instructing the jury that the valued policy law applied.

Reversed and dismissed.