BURFORD DISTRIBUTING, INC. *v.* Danny STARR

99-822                                    20 S.W.3d 363

Supreme Court of Arkansas
Opinion delivered July 7, 2000

*Eddie N. Christian Law Office*, by: *Joe D. Byars, Jr.*, for appellant.

*Sexton & Fields, P.L.L.C.*, by: *Sam Sexton, Jr.*, for appellee.

DONALD L. CORBIN, Justice. Appellant Burford Distributing, Inc., appeals the judgment of the Sebastian County Circuit Court awarding Appellee Danny Starr $40,000 in damages, plus an additional $10,000 in attorney's fees, for a violation of the Arkansas Prize Promotion Act. As this matter involves an issue of first impression, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We agree with Appellant that the Act is not applicable in this case, and thus, reverse the judgment of the trial court.

On August 3, 1996, Burford sponsored the "10th Annual Lite Open" golf tournament at Deer Trails Golf Course in Fort Chaffee, Arkansas. Each participant was required to pay a $40 entry fee. Robert Hornung, an employee of Burford's, testified that of that $40, $10 went to the Gregory Kistler Center, a local charity; $25 went to Deer Trails; and, $5 went to Burford to off-set the expense of the tournament. Burford did not make a profit as a result of sponsoring the golf tournament. To promote the event, Burford created and distributed flyers advertising the date and location of the golf tournament. Burford also advertised the fact that it would be awarding a car to the first person to score a hole-in-one on August 3.

Mr. Starr paid his entry fee approximately one week prior to the tournament. He learned of the tournament through an acquaintance, but had also played in the tournament in previous years. Mr. Starr testified that he did not know about the car giveaway at the time he paid his entry fee. Mr. Starr stated that he received a packet upon arriving at the tournament that contained a flyer advertising the hole-in-one contest. He also admitted, however, that he saw a large banner on Hole No. 17 that stated that the first person to make a hole-in-one on that hole would win a 1996 Buick Regal from Harry Robinson Pontiac.

This tournament was an eighteen-hole competition, but Deer Trails was only a nine hole golf course. Each of the nine holes has two separate tee areas in order to accommodate eighteen holes of

golf. The holes numbered 8 and 17 shared the same green, but the tee box for Hole No. 17 was located farther away from the hole than the tee box for Hole No. 8. Mr. Starr scored a hole-in-one on Hole No. 8, but later demanded the car, arguing that the flyer simply promised a car to the first player to score a hole-in-one.

After Burford refused to award Mr. Starr the Buick Regal, he filed suit in circuit court alleging breach of contract and violation of the Arkansas Prize Promotion Act, codified at Ark. Code Ann. §§ 4-102-101—109 (Repl. 1996). Mr. Starr ultimately dismissed the breach of contract claim, but a jury trial was held on the issue of whether Burford violated the Act. The jury found that Burford had intentionally violated the Act and awarded Mr. Starr $40,000 in pecuniary loss, an amount equal to twice the retail value of the Buick Regal. In addition, the trial court awarded Mr. Starr an additional $10,000 in attorney's fees. This appeal followed.

■ As one of its points on appeal, Burford contends that the trial court erred in denying its motion for directed verdict on the grounds that the Act does not apply under the facts and circumstances of this case. Mr. Starr responds that the Act is remedial in nature and should be liberally construed. This court has repeatedly held that the basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the legislature. *Nelson v. Timberline Int'l, Inc.*, 332 Ark. 165, 964 S.W.2d 357 (1998); *Graham v. Forrest City Housing Auth.*, 304 Ark. 632, 803 S.W.2d 923 (1991). In attempting to ascertain legislative intent, this court will look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, legislative history, and other appropriate matters that shed light on the matter. *Nelson*, 332 Ark. 165, 964 S.W.2d 357; *Board of Trustees v. Stodola*, 328 Ark. 194, 942 S.W.2d 255 (1997).

It is not difficult to ascertain the legislative intent of this Act because it is set out in section 4-102-101. A review of this section indicates that the legislature did not intend for the provisions of this Act to extend to the circumstances presented by this case. Section 4-102-101 states:

> (a) The Arkansas General Assembly has become aware of the avalanche of sweepstakes, contests, and prize promotions that have been and are being directed at Arkansas consumers, and recognizes that consumers are often misled by these sweepstakes, contests, and

prize promotions. The General Assembly also recognizes that Arkansas consumers have paid hundreds of thousands of dollars to sweepstakes, contests, and prize promoters based upon misrepresentations by those promoters to Arkansas consumers. Many of the sweepstakes, contests, and prize promotions are artfully crafted to lead Arkansas consumers to believe that they have been selected to receive valuable prizes, when such is not the case. The promotions often mislead Arkansas consumers as to the value of the prizes. The promotions often mislead Arkansas consumers as to their chances to receive the prize. The promotions often mislead Arkansas consumers to believe that they must purchase the promoter's product, or otherwise pay to the promoter sums of money in order to be eligible to receive the prize, or that the likelihood that the prize to be awarded will be increased, or that the consumer's application for the prize will receive special handling if the consumer purchases the promoter's product. These sweepstakes, contests, and prize promoters prey particularly upon elderly Arkansas consumers.

 .(b) *It is the intent of the General Assembly through the enactment of this chapter to require that Arkansas consumers be provided with all relevant information necessary to make an informed decision concerning sweepstakes, contests, and prize promotions.* It is also the intent of the General Assembly to prohibit misleading and deceptive prize promotions. This chapter shall be construed liberally in order to achieve this purpose. [Emphasis added.]

Clearly, the General Assembly wanted to put a stop to the deceptive practices of sweepstake companies and other promoters that mail notices to consumers promising them the chance to win valuable prizes.

 ■ ■ It is true that pursuant to section 4-102-101, this court must liberally construe the provisions of this subchapter. This requirement of liberal construction does not require, however, that we extend this legislation to situations not envisioned by the General Assembly. We have said before that even when reviewing an act under a liberal construction, this court must still apply its provisions according to their plain meaning. *See Stockton v. Sentry Ins.*, 337 Ark. 507, 989 S.W.2d 914 (1999). We will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *See St. Paul Fire & Marine Ins. Co. v. Griffin Constr. Co.*, 338 Ark. 289, 993 S.W.2d 485 (1999). The plain meaning of this Act's provisions is to prevent unfair contest practices by requir-

ing promoters to provide consumers with all necessary information to make informed decisions about these sweepstakes and contests before they agree to purchase the promoter's products.

Here, Burford did not require participants to purchase its products in order to be eligible for a chance to win the car. Mr. Starr was not required to pay anything other than his entry fee in order to compete for a chance to win the car. Other than the fact that he may have been a better golfer, Mr. Starr had the same chances of winning the automobile as every other player. There was no evidence introduced that Burford ever misled Mr. Starr about his chances of winning the car or that Burford ever indicated that Mr. Starr had won the car. In fact, the hole-in-one competition at issue in this case is a game of skill. It would have been impossible for Burford to provide Mr. Starr or any other participant with information on his chances of winning the car.

■ We also point out that section 4-102-105 provides further insight into the underlying purpose of this Act. This section sets forth certain practices that a sponsor may not engage in when offering prizes. Some of those prohibited practices include: misleading participants about the source of the prize; representing directly or by implication that the number of persons eligible to win is limited or that a person has been selected to receive a particular prize, unless true; representing that a person has an enhanced likelihood of winning a prize; representing directly or by implication that a person will have an increased chance of receiving a prize by making multiple purchases or donations; representing that a prize notice is urgent; or requesting that a person disclose personal information in connection with a prize promotion. The fact that Burford never engaged in any of these prohibited practices is also important to our determination that the Act is inapplicable in this case. Mr. Starr admitted that he never received any communication from Burford that induced him to participate in the golf tournament. He further admitted that at the time he agreed to participate in the tournament, he had no knowledge of the fact that Burford was offering a car in connection with a hole-in-one contest. Thus, Mr. Starr's payment of the entry fee was in no way connected with the car giveaway. Accordingly, we reverse the trial court's judgment because the Act is not applicable to this case.

■ Burford raises several other points on appeal but in light of our holding that the Act is inapplicable, the only other issue we must address involves the award of attorney's fees. Burford argues that it was error for the trial court to enter an award of $10,000 for attorney's fees pursuant to section 4-102-103. It is not necessary for us to address Burford's specific argument on this point. We have previously held that when a judgment in favor of a prevailing party is reversed, the award of attorney's fees must also be reversed. *See Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468 (1999); *Brookside Village Mobile Homes v. Meyers*, 301 Ark. 139, 782 S.W.2d 365 (1990). Accordingly, the award of attorney's fees in this case is also reversed.

Reversed.

BROWN and IMBER, JJ, dissent.

ROBERT L. BROWN, Justice, dissenting. I agree with the dissent of Justice Imber on the issue of sponsorship and the liberal construction of the Arkansas Prize Promotion Act. However, I disagree with her analysis of "pecuniary loss" and her conclusion that the trial court erred in not giving the instruction of Burford Distributing. In my opinion, what constituted a pecuniary loss under the Act was for the jury to decide. I would affirm.

ANNABELLE CLINTON IMBER, Justice, dissenting. I cannot agree with the majority's holding that the Arkansas Prize Promotion Act is not applicable to this case. The majority ignores part of the language in subsection (b) of Ark. Code Ann. § 4-102-101, where it says: "It is *also* the intent of the General Assembly *to prohibit misleading or deceptive prize promotions. This chapter shall be construed liberally*in order to achieve this purpose." Ark. Code Ann. § 4-102-101(b) (emphasis added).

Here, Burford published and distributed a flyer that contained misleading and deceptive information regarding the hole-in-one contest. On the day of the tournament, the participants, including Mr. Starr, checked in at the clubhouse and were given "goodie bags" containing a flyer with the words "first hole-in-one August 3rd wins a car by Harry Robinson Poniac [sic] and also on a separate hole the first hole-in-one wins a $1000.00[.]" According to Mr. Starr, there was a sign in the clubhouse that said first hole-in-one on Hole No. 8 wins a car. However, upon reaching the tee

boxes for the seventeenth and eighth holes, Mr. Starr and the other participants saw a banner containing contradictory rules for the contest. It stated that the "first hole-n-one on No. 17 wins this Buick Regal." A Buick Regal was also parked near the seventeenth tee box.[1]

The General Assembly has expressly stated its intent to prohibit such misleading or deceptive prize promotions, and, in order to achieve that purpose, has directed that the Act be construed liberally. The majority's holding that the Act is not applicable to Burford's golf tournament is the product of strict construction and a selective reading of the legislature's express intent.

Furthermore, Arkansas Code Annotated section 4-102-102(3) defines "sponsor:"

> "Sponsor" means a corporation, partnership, limited liability company, sole proprietorship, or natural person that offers a prize to a person in Arkansas in conjunction with the sale or lease of any product or service, or in conjunction with any real or purported contest, competition, sweepstakes, puzzle, drawing, scheme, plan, or other selection process that requires, or creates the reasonable impression of requiring, or allows the person to pay any money as a condition of receiving, or in conjunction with allowing the person to receive, use, compete for, or obtain a prize or information about a prize.

The definition states that a "sponsor" is a corporation (Burford) that offers a prize (the car) to a person in Arkansas (Mr. Starr) in conjunction with any real or purported competition (the golf tournament) that requires or allows the person "to pay any money as a condition of receiving, or in conjunction with allowing the person to receive, use, compete for, or obtain a prize." Although Mr. Starr paid his entry fee before he knew about the prize, the payment of his entry fee was still a condition of competing for the prize. Several witnesses testified that no one could participate in the tournament without first paying the entry fee of $40 per person or $160 per team. In fact, Mr. Richard Burford, president of Burford Distributing, testified that the participants had to pay money as a

---

[1]  Mr. Starr hit the first and only hole-in-one of the August 3rd tournament, and, according to the flyer distributed before the tournament, he was the winner of the car. However, according to the banner, he was not the winner of the car because he hit the hole-in-one on the eighth hole rather than the seventeenth hole.

condition of being in the golf tournament. Thus, there was substantial evidence that Burford was a "sponsor."

Although I disagree with the majority's reasoning regarding the application of the Arkansas Prize Promotion Act to this case, I nonetheless conclude that the case should be reversed and remanded because the trial court failed to instruct the jury on the meaning of the term "pecuniary loss." Burford argues that the trial court erred when it refused to instruct the jury on the meaning of "pecuniary loss" as that term is used in the Arkansas Prize Promotion Act. Ark. Code Ann. § 4-102-103(c)(1) (Rep. 1996) provides that:

> Any person suffering a pecuniary loss because of an intentional violation of this chapter may bring an action in any court of competent jurisdiction and shall recover:
>
> (A) Costs;
>
> (B) Reasonable attorney's fees; and
>
> (C) The greater of:
>
> (i) Five hundred dollars ($500); or
>
> (ii) Twice the amount of the pecuniary loss.

Ark. Code Ann. § 4-102-103(a)(1). At the close of the case, the trial court instructed the jury and read the relevant portions of the Act, including Ark. Code Ann. § 4-102-103(c)(1). Burford had previously proposed an additional jury instruction which read as follows: "You are instructed that 'pecuniary loss' means the amount of monetary loss (as opposed to the 'retail value' of the prize) suffered by Danny Starr, if any, because of any intentional violation of A.C.A. § 4-102-105 or § 4-102-106." The trial court, however, refused to submit that instruction to the jury, and stated that "it's a question of fact for the jury as to what damages there will be; whether the retail value will be awarded or not is up to the jury." Burford alleges that the trial court erred in so ruling. I agree.

The meaning of "pecuniary loss" as used in the Act is at issue here. The basic rule of statutory instruction is to give effect to the intent of the legislature. *State v. R & A Investment Co.*, 336 Ark. 289, 985 S.W.2d 299 (1999). When a statute is clear, we give the statute its plain meaning, and the intent of the legislature is determined

from the language used. *Id.* We are hesitant to interpret a legislative act in a manner contrary to its express language unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.* In interpreting a statute and attempting to construe legislative intent, we look to the language of the whole act. *John B. May Co. v. McCastlain*, 244 Ark. 495, 426 S.W.2d 158 (1968). If the language is ambiguous or uncertain, we then look to the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate means that throw light on the subject. *Id.*; *State v. R & A Investment Co.,supra.* Here, the language of the Act is not ambiguous or uncertain. We can and should determine the intent of the legislature from the plain language of the Act.

Arkansas Code Annotated section 4-102-101 contains legislative findings, declarations, and statements of intent. Subsection (a) of section 4-102-101 states in part that the General Assembly "recognizes that consumers have paid hundreds of thousands of dollars to sweepstakes, contests, and prize promoters based upon misrepresentations by those promoters to Arkansas consumers." Subsection (a) further states that "[t]he promotions often mislead Arkansas consumers to believe that they must purchase the promoter's product, or otherwise pay the promoter sums of money in order to be eligible to receive the prize." Thus, it is clear that the legislature was concerned, at least in part, with the amounts of money that Arkansas consumers have paid out of their pockets for contests and promotions. Also, Ark. Code Ann. § 4-102-102(2) defines the term "retail value" and then, in Ark. Code Ann. § 4-102-107(2), requires sponsors who represent to a contestant that they have won a prize to provide the contestant with at least the "retail value" of the prize. Despite the fact that "retail value" is specifically defined in the Act, that term is *not* used in Ark. Code Ann. 4-102-103(c)(1), which lists specific categories of relief that are available under the Act. Rather, that section refers to a "pecuniary loss." Based upon this statutory language, it is evident that the legislature did not intend for "pecuniary loss" and "retail value" to mean the same thing. Instead, "pecuniary loss" refers to money that Arkansas consumers pay to prize promoters and contest sponsors out of their own pockets. This interpretation of "pecuniary loss" is supported by our case law. *See Interstate Freeway Serv., Inc. v. Houser*, 310 Ark. 302, 835 S.W.2d 872 (1992) (equating the out-of-pocket measure

of damages in a fraud case to the pecuniary loss sustained as a result of the fraud). Moreover, the damages provision of Ark. Code Ann. § 4-102-103(c)(1) allows a plaintiff to recover the greater of twice the amount of "pecuniary loss" or $500. Interpreting "pecuniary loss" to mean out-of-pocket loss rather than the retail value of the prize is more consistent with the use of the $500 measure of loss.[2] For these reasons, I believe that the jury instruction proposed by Burford was a correct statement of the law.

While a trial court is not required to give every correct instruction offered when the instructions given explicitly, clearly, fully, and fairly cover the matter requested, the trial court's refusal to give a proper instruction will result in reversal, unless it affirmatively appears that no prejudice resulted. *Benson v. Temple Inland Forest Prods. Corp.*, 328 Ark. 214, 942 S.W.2d 252 (1997). Here, the instructions did not clearly, fully, and fairly cover the matter because it left the jury with the ability to determine on their own what "pecuniary loss" meant. In doing so, the jury determined Mr. Starr's pecuniary loss to be $20,000 or the retail value of the car. That determination was contrary to the plain language of the statute and resulted in prejudice to Burford. I must therefore conclude that the trial court's refusal to properly instruct the jury on the meaning of "pecuniary loss" should result in reversal.

Burford also argues that we should reverse the trial court's award of attorney's fees in the amount of $10,000 because the award of $10,000 attorney's fees is excessive if we interpret "pecuniary loss" to mean out-of-pocket expenses rather than the retail value of the car. Mr. Starr is entitled to recover "costs" and "reasonable attorney's fees" pursuant to Ark. Code Ann. § 4-102-103(c)(1). Under that same provision, his recovery for pecuniary loss would be limited to $500 based upon the evidence introduced at trial.[3] An award of $10,000 attorney's fees is clearly excessive when compared to a recovery of $500 for pecuniary loss.

---

[2] This conclusion is also supported by the language in section 4-102-103(d): "The relief provided in this section is *in addition* to remedies and penalties otherwise available in regards to the same conduct under law or under other statutes of this state." (Emphasis added.) The relief available under the Act is *in addition* to and distinct from the benefit-of-the-bargain damages available in actions for breach of contract or fraud. In this case, Mr. Starr elected to abandon his breach of contract claim.

[3] Mr. Starr paid $40 to enter the tournament. Twice the amount of his pecuniary loss would be $80.

In my view, this matter should be reversed and remanded. I respectfully dissent.

BROWN, J., joins this dissent in part.